■ STEVI BROOKS et al., Appellants, v ZURICH-AMERICAN IN-SURANCE GROUP, Respondent, et al., Defendants. [753 NYS2d 454] —Order, Supreme Court, New York County (Jane Solomon, J.), entered January 9, 2002, which granted reargument and, upon reargument, adhered to the prior order, same court and Justice, entered July 2, 2001, dismissing portions of the fifth cause of action for breach of contract, unanimously modified, on the law, to deny the cross motion for partial summary judgment with regard to the fifth cause of action, and to reinstate the fifth cause of action, and otherwise affirmed, without costs. Appeal from the aforesaid order entered July 2, 2001, unanimously dismissed, without costs, as academic.

Plaintiff Brooks is a garment designer and president of plaintiff Beverly Hills Design Studio (BHDS). BHDS used independent sewing contractors to manufacture the garments, which it then sold to retailers. Between 1987 and 1990, finished goods were shipped to the BHDS warehouse in Georgia, where BHDS quality control managers inspected, and if necessary rejected, finished garments. During this period, many garments were found to be substandard. In fact, on at least five separate occasions, from December 1988 through May 1990, BHDS inventory was found to contain thousands of completed garments that were grossly undersized, distorted and incorrectly cut and sewn. On the assumption that the problem was caused by the suppliers and that the defects in the garments were missed by the quality control managers, Brooks terminated a contract with a major supplier. In May 1990, BHDS commenced its own manufacturing operation in Georgia. However, garments manufactured at the BHDS factory were also substandard, leading Brooks to believe that sabotage, and not defects in workmanship, might be involved in a May 1990 loss. In fact, she had hired private investigators to examine the cause of the losses from 1987 to early 1990. The investigator's February 1990 report concluded that the defective products were actually the result of intentional conduct. A particular plant manager whom she came to suspect resigned in June 1990, and the apparent vandalism ceased.

During the 1987 through 1991 time periods, insurance coverage in the form of "All Risk" property and liability policies was provided by defendant Zurich. Three policies were then in effect, each reflecting annual renewals, and each requiring prompt notification to the carrier in the event of an insured loss. Brooks filed claims in June 1990, shortly after the plant manager quit and the apparent vandalism ceased. The claims covered losses beginning in December 1988. Brooks also filed an incident report, relating to losses between June 1, 1990 and June 19, 1990, with local police on June 20, 1990. The actual proofs of loss were not prepared until February 15, 1991.

In connection with renewal of the policy, defendant Zurich had inspected the BHDS facility on April 4, 1990, finding generally no reported general liability or workers' compensation claims, and noting that Brooks had advised the carrier that there had been no claims made against the product. Of course, at this time, the possibility of vandalism seemed unclear and Brooks had concluded that poor workmanship was not covered by the policies, and hence, no insurance claims had been made at that time.

Defendant declined the claims on October 11, 1991, 15 months after they had been filed. The letter of declination asserted that the losses arose from poor workmanship and errors during the manufacturing process, that defects in workmanship were not covered losses, and that losses incurred in the manufacturing process were expressly excluded from coverage. Moreover, defendant contended that the policy excluded losses resulting from misappropriation or infidelity by an employee, although there remains an issue whether particular renewals contained an exception from this exemption for employee vandalism. Finally, defendant contended that prompt notice had not been given to the insurer. The letter of declination specified no prejudice resulting from the delay. Plaintiffs thereafter filed the present complaint.

Plaintiff moved for partial summary judgment on the fifth cause of action for breach of contract, and defendant cross-moved for dismissal of the complaint. The cause of action for breach of contract is based on defendant carrier's failure to respond to plaintiff's claims for 15 months, and then taking another 16 months to review plaintiff's evidence, and then denying the claims on the basis of fraudulent and unsupported allegations. Plaintiff therein also alleged that defendant's dilatoriness and conduct effectively cost plaintiff its business. The court denied plaintiffs' motion for partial summary judgment on the fifth cause of action, and granted the cross motion

to dismiss as to the first four incidents of loss, effectively dismissing the complaint except as to that portion of the fifth cause of action for loss relating to the period between May and June 1990.

We reinstate all aspects of the fifth cause of action. We have noted that "[i]t is well settled that compliance with an insurance policy notice provision operates as a condition precedent to coverage" (*Paramount Ins. Co. v Rosedale Gardens*, 293 AD2d 235, 239), though "[t]he obligation to give notice 'as soon as practicable' of an occurrence that may result in a claim is measured by the yardstick of reasonableness" (*id.*). A delay in providing notice may reasonably be explained by a lack of necessary knowledge (*Security Mut. Ins. Co. v Acker-Fitzsimons Corp.*, 31 NY2d 436, 439), in that the covered party may be unaware that an occurrence triggers coverage (*Cline, Davis & Mann v Travelers Ins. Co.*, 242 AD2d 221; *Foy v D.B. Frame Shop*, 210 AD2d 162). There are sufficient indicia of reasonableness in connection with the delay in this case. As noted above, BHDS did not ascertain that its losses may be covered under the policies until 1990 when it discovered possible industrial sabotage by either third parties or BHDS employees. Further, the confusion as to whether the defective products, if the result of vandalism, were caused by third parties or by employees, which distinction might well affect coverage, appears to have been a good faith reason for not filing an earlier claim. Finally, the court erred in concluding as a matter of law that the "Cause of Loss—Special Form" with its attendant exemption for acts of employee vandalism from the policy exclusion for employee criminality, was not included in the "01" renewal. Disparities in the record indicate that this remains an issue of fact. Concur—Tom, J.P., Ellerin, Lerner, Rubin and Gonzalez, JJ.