The TRAVELERS INSURANCE COMPANIES, et al., Appellants–Defendants,

v.

MAPLEHURST FARMS, INC., et al., Appellees–Plaintiffs.

No. 49A04–1006–PL–394.

Court of Appeals of Indiana.

Aug. 24, 2011.

Rehearing Denied Oct. 21, 2011.

Richard A. Rocap, Indianapolis, IN, Jeffrey C. Gerish, Stephen P. Brown, David A. Dworesky, Plunkett Cooney, Bloomfield Hills, MI, Attorneys for Appellants.

Brent W. Huber, Ice Miller LLP, Indianapolis, IN, Amici Curiae Indiana Petroleum Marketers and Convenience Stores Association and Indiana Manufacturers Association.

George M. Plews, Jeffrey D. Featherstun, Todd J. Janzen, Plews Shadley Racher & Braun LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

BAKER, Judge.

This is an insurance contract dispute that involves an attempt by appellees-plaintiffs Maplehurst Farms, Inc., et al. (Maplehurst) to recover from various insurers those costs and expenses that were incurred in resolving an environmental cleanup matter prior to notifying the insurers of an underground storage tank (UST) leak.

Appellants-defendants Travelers Insurance Companies et al. (Travelers) appeal the trial court's grant of summary judg-

ment entered in favor of Maplehurst, claiming that the designated evidence established that Maplehurst breached the insurance contract regarding the notice provisions contained in the insurance policy. Travelers also maintains that the trial court erred in failing to enforce the voluntary payment provisions under the policies, and that the order directing them to reimburse Maplehurst's pre-notice, pre-tender costs contravenes our Supreme Court's holding in *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267 (Ind. 2009).

Maplehurst cross appeals, arguing that it is entitled to an award of attorney's fees because Travelers breached its duties and obligations under the policy and raised several unreasonable and groundless defenses to Maplehurst's claims.

We conclude that the trial court erred in granting Maplehurst's motion for summary judgment that directed Travelers to reimburse Maplehurst for the pre-notice costs and indemnity expenses in light of our Supreme Court's pronouncement in *Dreaded*. We also hold that Maplehurst is not entitled to an award of its attorney's fees from Travelers.

We therefore reverse the entry of summary judgment in Maplehurst's favor with regard to the pre-notice costs and expenditures that Maplehurst incurred and remand this cause to the trial court with instructions to enter summary judgment in Travelers's favor as to these costs and expenses and for further proceedings consistent with this opinion.

## FACTS [1]

Maplehurst owned and operated a dairy in Indianapolis from the 1930s until the late 1990s. Sometime in the 1950s, Maple-

hurst installed a UST on the site that was used to store heating oil until the 1970s.

In 1997, Maplehurst sold the site to the Dean Foods Company (Dean), which operated the business for several years. Dean subsequently conveyed the property to Palmer. Sometime in early 2000, a release of petroleum constituents from the UST was discovered on the dairy site. Later that year, Dean notified Maplehurst of the situation and demanded that Maplehurst investigate the incident. Dean eventually agreed, and it negotiated with Maplehurst about remediating the site for nearly two years.

Dean reported the leak to the Indiana Department of Environmental Management (IDEM). As a result, IDEM sent Maplehurst a letter in January 2002, demanding that Maplehurst investigate and remediate the release. IDEM stated that if Palmer, Dean, and Maplehurst were not able to reach an agreement and provide a proposal to IDEM within 30 days, IDEM would issue an order from its commissioner requiring the parties to undertake necessary and future action on the property.

Maplehurst retained the law firm of Plews, Shadley, Racher, and Braun (Plews) to defend against Dean's and IDEM's claims. Maplehurst also employed Troy Risk, an environmental consultant, to assist in dealing with Dean's and IDEM's claims.

In September 2002, Maplehurst submitted a proposed corrective action plan to IDEM for remediation of the site. Because Dean already had incurred substantial costs in responding to the release, it demanded that Maplehurst reimburse it in the amount of $321,000. Thereafter, on December 27, 2002, Maplehurst negotiated a settlement agreement with Dean. Maple-

---

1. We heard oral argument in this case on June 14, 2010, in Indianapolis. We com-

mend counsel for their oral advocacy and written presentations in this matter.

hurst ultimately agreed to pay Dean $170,000 to reimburse it for the remediation expenses that were incurred.

Travelers and its affiliates insured Maplehurst under a commercial general liability (CGL) policy from November 1, 1987, through August 1, 1993.[2] Maplehurst undertook a search for the insurance policies after it learned of Dean's and IDEM's claims. Howard Mills, the corporate officer who was responsible for winding up Maplehurst's affairs, acknowledged that finding the policies was difficult. In fact, when Maplehurst ceased operations in 1997, the company's files were transferred to an off-site storage facility. Many employees who had worked for Maplehurst were either deceased or their whereabouts were unknown. Rick Kendall, the past president of Maplehurst, who was primarily responsible for purchasing the insurance policies, was deceased. As a result, Maplehurst had to request its attorneys to search for the policies and put its insurers on notice of the claims. Ironically, Maplehurst eventually discovered the Travelers policy from Travelers itself after Travelers had been notified by its agent.

The GCL policies that are relevant here contain nearly identical notice and voluntary payment provisions. For instance, the conditions in the policies state:

> 2. Duties in the Event of Occurrence, Claim or Suit
>
> a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
>
> (1) How, when and where the "occurrence" or offense took place;
>
> (2) The names and addresses of any injured persons and witnesses; and
>
> (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.
>
> b. If a claim is made or "suit" is brought against any insured, you must:
>
> (1) Immediately record the specifics of the claim or "suit" and the date received; and
>
> (2) Notify us as soon as practicable. You must see to it that we received written notice of the claim or "suit" as soon as practicable.
>
> c. You and any other involved insured must:
>
> (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
>
> (2) Authorize us to obtain records and other information;
>
> (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and
>
> (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.
>
> d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Appellants' App. p. 686.

Maplehurst gave notice of the incident to American Economy in March 2003, and

---

**2.** Maplehurst also tendered claims to the Century Indemnity Company (Century) for policy years 1971–1981, and American Economy for August 1, 1987–1992. Century and American Economy provided Maplehurst with a post-tender defense and have since entered settlement agreements.

to Century, in April 2003. American Economy and Century had policies similar to that of Travelers, wherein they agreed to defend Maplehurst. The first notice of the leakage on the site to Travelers was sent by Maplehurst's broker, AON, on May 30, 2003. Travelers responded to the notice in a letter to Maplehurst's counsel on June 9, 2003, indicating that its liability coverage unit was in the process of searching Travelers' records for copies of insurance policies that it may have issued to Maplehurst. Travelers also advised Maplehurst that

> Your letter also indicates that Maplehurst has already investigated the contamination at the Site, and has begun remediation; however, Travelers first notice of this matter was the ACORD dated May 30, 2003. Accordingly, Travelers specifically reserves the right to assert that Maplehurst violated the Conditions section of any policies purportedly issued by Travelers pertaining to Maplehurst's duty to provide timely notice to Travelers in the event of an occurrence or claim.

> Further, to the extent Maplehurst has made any payments and/or assumed any obligations with respect to this matter, Travelers specifically reserves the right to assert that Maplehurst violated the Conditions section of any policies issued by Travelers pertaining to voluntary payments and the assumption of obligations made by Maplehurst.

Appellants' App. p. 2844–45.

Thereafter, on June 17, 2004, Travelers was copied on a letter from Maplehurst's counsel to Century. That letter notified Travelers for the first time that Maplehurst had received a demand from Dean and, in fact, had settled Dean's claim for $170,000 on December 27, 2002. Because the insurers had not been made aware of the petroleum leak at an earlier time, none of the companies had any input, approval, or participation in Maplehurst's decisions. They also did not participate in Settlement Agreement negotiations.

Travelers ultimately denied coverage for the underlying IDEM claim in a letter dated February 21, 2005. Travelers reiterated the conditions in the policies that required Maplehurst to provide timely notice of claims and prohibiting Maplehurst from paying out money on claims without Travelers's consent. Travelers also maintained that the IDEM proceedings were administrative only and did not amount to a lawsuit for damages. Thus, Travelers claimed that it would not provide a defense for Maplehurst under the policy. Travelers further asserted that an "absolute pollution exclusion" under the policy barred Maplehurst's claim, and that there had been no "occurrence" as defined in the contract. Appellants' App. p. 2252.

On March 16, 2007, Maplehurst filed a complaint in the Marion Superior Court (Environmental Division) against Century, Travelers, and American Economy. Maplehurst sought to recover its expenditures and defense and indemnity costs from Century and American Economy. The unreimbursed expenses were the amounts that Maplehurst had expended before it provided notice of the claim to any of the insurers.

In addition to the $170,000 that Maplehurst paid Dean for indemnification, Maplehurst paid $89,984.31 in defense of the IDEM claim prior to tender, and $295,896.98 in defense of that claim after tender, as of July 8, 2009.

All parties filed cross-motions for partial summary judgment with regard to Maplehurst's pre-notice, pre-tender expenditures. Century and American Economy also moved for summary judgment on cross-claims that they had filed against Travelers, seeking contribution with re-

gard to defense costs they had incurred after the insurers received notice.

Following a hearing, the trial court granted Maplehurst's motion for summary judgment on May 14, 2010. In the nearly fifteen pages of findings of fact and conclusions of law, the trial court found that Travelers breached its duty to defend under the policy. The trial court distinguished our Supreme Court's decision in *Dreaded*, and determined that no rule was created establishing that the payment of all pre-tender costs is automatically excluded. Moreover, the trial court reasoned that the holding in *Dreaded* does not apply in these circumstances because Travelers refused to defend Maplehurst once tender was made. The trial court observed such was not the case in *Dreaded*, because the insurer immediately agreed to defend its policy holder for obligations that were incurred after tender.

The trial court also noted that *Dreaded* determined that delayed tender may be "legally excused" in certain circumstances. 904 N.E.2d at 1273. Moreover, situations such as lost insurance policies can excuse delayed notice and permit recovery of pre-notice defense costs. As a result, tender will not be considered unreasonably late in those extraordinary circumstances.

The trial court's ruling also noted that *Dreaded* did not discuss or address indemnity costs. Thus, there was no basis to conclude that the cost constraints discussed in *Dreaded* apply to indemnity claims. And there was no showing that Travelers was prejudiced by the timing of Maplehurst's notice of IDEM's claim. Therefore, the timing of the notice was not a defense to Travelers's obligation to Maplehurst under the policy. Indeed, the trial court noted that Maplehurst settled a $321,000 claim for $170,000.

The trial court determined that Travelers is estopped by its breach and delay in responding to its policy holder from asserting any contractual defenses. Therefore, the trial court determined that Maplehurst could recover its pre-tender defense costs of $89,984.31 and indemnity costs, together with prejudgment interest as calculated through May 1, 2010. Finally, the trial court declared all other remaining pending summary judgment motions moot. Travelers now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

When reviewing a grant of summary judgment, our standard of review is the same as the trial court. *Dreaded*, 904 N.E.2d at 1269. Considering only those facts that the parties designated to the trial court, we must determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C). In answering these questions, we construe all factual inferences in the nonmovant's favor and resolve all doubts as to the existence of a material issue against the movant. *Id.* at 1270.

Our review is not altered where a trial court enters findings of fact and conclusions of law thereon in granting a motion for summary judgment. *Decker v. Zengler*, 883 N.E.2d 839, 842 (Ind.Ct.App. 2008). In such context, we are not bound by the trial court's specific findings and conclusions, although they aid our review by providing us with a statement of reasons for the trial court's action. *Id.*

### II. Travelers's Contentions

Travelers argues that the trial court erred in failing to enforce the voluntary payment provision in the insurance policy in light of our Supreme Court's holding in *Dreaded*. More specifically,

Travelers maintains that Maplehurst is solely responsible for the expenses it incurred without Travelers's consent, including attorney's fees and costs and other expenditures that it paid under the Settlement Agreement. As a result, Travelers asserts that the trial court's order requiring Travelers to reimburse Maplehurst's pre-notice, pre-tender costs was erroneous.

As noted above, the language in the Travelers policy states that

> No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Appellant's App. p. 686. In light of this language, Travelers asserts that Maplehurst must bear the expenses that Maplehurst obligated itself to pay under the 2002 Settlement Agreement.

We note that in *Dreaded,* a policyholder received a demand from IDEM to clean up a possible soil contamination site. Dreaded, the previous owner of the site, waited three and one-half years before notifying St. Paul, its insurer, of the contamination. 904 N.E.2d at 1269. Dreaded sought reimbursement for defense costs and expenses that it had incurred before it gave notice.

St. Paul responded by agreeing that the IDEM claim fell within the policies' provisions that obligated St. Paul to defend Dreaded from that point forward, but "expressly reserving its rights and refusing to reimburse Dreaded for defense costs incurred prior to ... notice and tender." *Id.* In granting St. Paul's motion for summary judgment, the trial court determined that

> [a] policyholder has a duty to tender claims in order to trigger an insurer's duty to defend under a general liability policy; [a] showing of prejudice is not required in the present case; and [e]ven

if a showing of prejudice was required in this case, this Court finds that Dreaded's delay of nearly three and one-half years in tendering the [u]nderlying IDEM claim to St. Paul is unreasonable as a matter of law, and gives rise to a presumption of prejudice in St. Paul's favor.

*Id.* at 1269.

On appeal, a panel of this court reversed and concluded that

> Dreaded's delay in notifying St. Paul of the IDEM claim was unreasonable; that prejudice must be shown by St. Paul, but would be presumed due to the unreasonably late notice; and that the presumption is rebuttable and Dreaded has designated sufficient evidence to raise a genuine issue of material fact as to whether St. Paul was prejudiced as a result of the delayed notice.

*Id.* (citing *Dreaded, Inc. v. St. Paul Guardian Ins. Co.,* 878 N.E.2d 467, 474 (Ind.Ct.App.2007)).

Our Supreme Court granted transfer and determined, among other things, that St. Paul had no obligation to reimburse the policyholder for pre-tender defense costs because notice was unreasonably late. *Id.* at 1272–73. More specifically, the *Dreaded* Court stated that

> We affirm the trial court's grant of St. Paul's motion for summary judgment and hold that, as to claims seeking recoupment of an insured's pre-notice defense costs predicated on an alleged breach of an insurer's duty to defend, the insurer's duty to defend did not arise and prejudice is an irrelevant consideration.

*Id.* at 1268.

It was also noted that St. Paul was not seeking to avoid *all* of its obligations under the policies. *Id.* at 1270. Indeed, St. Paul

did, in fact, upon receiving notice, "assume the defense of Dreaded as to [the] claim." *Id.* Similarly, Travelers adduced both in its appellate brief and at oral argument that it was not seeking to avoid all of its obligations under the policies. And *Dreaded* made clear that

> an insurer cannot defend a claim of which it has no knowledge. The function of a notice requirement is to supply basic information to permit an insurer to defend a claim. The insurer's duty to defend simply does not arise until it receives the foundational information designated in the notice requirement. Until an insurer receives such enabling information, it cannot be held accountable for breaching this duty.

*Id.* at 1273. Finally, it was concluded that

> St. Paul was under no duty to defend the IDEM claim in the absence of any knowledge of the claim, and St. Paul did not need to present any separate proof of prejudice to justify its failure to defend during the pre-notice period. We affirm the trial court's grant of summary judgment in favor of St. Paul.

*Id.*

In light of the above, it is apparent that the trial court's order directing Travelers to reimburse Maplehurst for the pre-notice, pretender costs is contrary to the fundamental holding in *Dreaded* that such costs cannot be recovered. Granted, when an insured is late in providing notice of a claim and the insurer responds by denying all coverage, prejudice to the insurer caused by the late notice is a potentially relevant consideration as to the insurer's post-notice obligations. *Id.* However, regardless of the relevance that prejudice plays in the context of *post-notice* obligations, an insured is not entitled to recover *pre-notice* costs. Simply put, an insurer's duties under the policy do not arise

unless and until the insurer has knowledge of the claim. *Id.* at 1273.

Applying the holding in *Dreaded*, Maplehurst cannot recover costs or expenditures that it incurred prior to giving Travelers notice of the underlying environmental claim. In short, the trial court's award of Maplehurst's pre-notice, pre-tender defense costs runs afoul of *Dreaded*. *See also Tri–Etch, Inc. v. Cincinnati Ins. Co.*, 909 N.E.2d 997, 1005 (Ind.2009) (observing that "there is no reason why an insurer should be required to forego a notice requirement simply because it has other valid defenses to coverage"), *trans. denied.* Because all of the costs and expenditures at issue in this case were incurred by Maplehurst before it notified Travelers of the claim, those costs cannot be recovered.

Notwithstanding the rationale espoused in *Dreaded*, Maplehurst contends that Travelers was nonetheless required to establish prejudice before it could refuse to pay under the pre-notice provisions. For instance, Maplehurst directs us to a number of cases for the proposition that (1) if notice is found to be unreasonably late, prejudice to the insurer is presumed; but (2) this prejudice may be rebutted with evidence from the policyholder. *See Miller*, 463 N.E.2d at 265–66 (before *Dreaded*); *Tri–Etch*, 909 N.E.2d at 997 (after *Dreaded*); and *Indiana Farmers v. North Vernon Drop Forge*, 917 N.E.2d 1258, 1275 (Ind.Ct.App.2009) (applying the two-part inquiry to an IDEM enforcement claim), *trans. denied.*

We note that in *Morris v. Economy Fire & Cas. Co.*, 848 N.E.2d 663 (Ind.2006), our Supreme Court vacated this court's decision that refused to enforce a condition to coverage, absent a showing of prejudice to the insurer. It was determined that

> While disputes regarding alleged breaches of an insured's duty under a separate "cooperation clause" may ne-

cessitate consideration of resulting prejudice to the insurance company, such prejudice is not a necessary consideration in determining the enforceability of other insurance policy provisions.

*Id.* at 666. In light of the above, it is apparent that where an insured enters into a settlement agreement without the insurer's consent in violation of a voluntary payment provision, that obligation cannot be recovered from the insurer, and prejudice is irrelevant. Thus, Maplehurst's argument fails pursuant to *Dreaded* and *Morris.*

Finally, Maplehurst argues that its delay for giving notice was "legally excused" under *Dreaded.* Appellees' App. p. 16. Maplehurst points out that its former chairman testified that he diligently searched for the insurance policies after learning of the claim, but this process was slow because Maplehurst had wound up its operations in 1997, and the past president and risk manager had died before the claim arose. In essence, Maplehurst appears to be arguing that its delay in giving notice to Travelers should be legally excused only because it could not find its policies, its insurers, or its insurance agent. Notwithstanding this contention, it

was also argued in *Dreaded* that the insured's delay was caused by the client's extended difficulties in identifying the relevant insurers and locating policy information.[3] And none of these difficulties legally excused a three-year delay in *Dreaded.*

Most recently, in *Auto–Owners Ins. Co. v. Hughes,* 943 N.E.2d 432 (Ind.Ct.App. 2011), the issue was whether principles of equity and fairness create a limited duty on the insurer's part to provide a copy of an insurance policy. Although we determined that the insurer does have a limited duty to provide its insured with a copy of the policy upon request after a loss, we did not suggest—nor do we today—that an insured's inability to locate its policy through no fault of the insurer legally excuses a delay in providing notice. As a result, Maplehurst's contention that its delayed tender amounted to a legal excuse fails.[4] In sum, *Dreaded* controls the circumstances here, and the trial court erred in granting Maplehurst's motion for summary judgment and denying Travelers's motion for summary judgment.

### III.  Cross–Appeal; Attorney's Fees

◼ Maplehurst cross-appeals claiming that it is entitled to attorney's fees because

**3.** *Dreaded,* Reply Br. p. 7 fn.3; 2007 WL 5326281 at 7.

**4.** Although Maplehurst does not prevail on the theory of legal excuse with regard to pre-notice costs and expenses, we note that other jurisdictions have recognized that delays under different circumstances might constitute legal excuse. *See Commercial Underwriters Ins. Co. v. Aires Envtl. Servs., Ltd.,* 259 F.3d 792, 796 (7th Cir.2001) (observing that a standard of reasonableness should be applied to determine whether notice was timely); *Columbia Union Nat. Bank v. Hartford Acc. & Indem. Co.,* 669 F.2d 1210, 1213–14 (8th Cir. 1982) (suggesting that the lack of knowledge of the insurance particulars by the policyholder may excuse a delay in giving notice); *Pikey v. Gen. Acc. Ins. Co. of America,* 922 S.W.2d 777, 781 (Mo.Ct.App.E.D.1996) (holding that

delayed notice may be excused if the policyholder is unable to obtain a copy of a policy); *Unverzagt v. Prestera,* 339 Pa. 141, 13 A.2d 46, 47 (1940) (observing that if it is impossible to give notice upon the exercise of due diligence, notice that is given within a reasonable time after it is possible to do so will suffice); *Reynolds Metal Co. v. Aetna Cas. & Sur. Co.,* 259 A.D.2d 195, 696 N.Y.S.2d 563, 567 (1999) (a policyholder's good faith belief about lack of coverage may also excuse delayed notice); and *Brooks v. Zurich–Amer. Ins. Group,* 300 A.D.2d 176, 753 N.Y.S.2d 454, 456 (2002) (denying insurer's motion for summary judgment even though the policyholder waited three years to report the claim in light of the general state of confusion as to what caused the damage).

Travelers has asserted "numerous utterly meritless coverage defenses" and did not withdraw them. Appellee's Reply Br. p. 5. And while we have determined that Travelers prevails with regard to its obligation to pay the pre-notice costs and expenses, Maplehurst contends that it was forced to plead, brief, and argue various insurance coverage defenses that have been repeatedly invalidated by our courts, including a "pollution exclusion," whether this action amounted to a "suit," and whether there was an "occurrence" as defined in the policy. *Id.; see also* Appellants' App. p. 2256.

Indiana Code Section 34–52–1–1(b) provides that

(b) In any civil action, the court may award attorneys' fees as part of the cost to the prevailing party, if it finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

We review the trial court's decision to award attorney's fees and the amount thereof under an abuse of discretion standard. *Breining v. Harkness,* 872 N.E.2d 155, 161 (Ind.Ct.App.2007). A defense is "frivolous" if it is advanced primarily for the purpose of harassment, if counsel is unable to make a good faith and rational argument on the merits of the action, or if counsel cannot support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law. *Id.* Moreover, a claim or defense is "unreasonable" if, based on the totality of the circumstances, including the law and the facts known at the time of filing, no reasonable attorney

would consider that the claim or defense was worthy of litigation. A defense is considered "groundless" if no facts exist that support the legal claim presented by the losing party. Finally, a trial court is not required to find an improper motive to support an award of attorney fees; rather, an award may be based solely upon the lack of a good faith and rational argument in support of the claim. *Id.*

As discussed above, we have determined that Travelers prevails on its claims regarding the obligation to pay Maplehurst's pre-notice costs and expenses. Even more compelling, the issue of attorney's fees is irrelevant to the question presented in this appeal. The argument that Travelers has advanced in this litigation is that Maplehurst cannot recover the pre-notice, pretender expenses that were incurred before Maplehurst notified Travelers of the claim. We cannot say that Travelers's claims and/or defenses are unreasonable or groundless in these circumstances. And Maplehurst has failed to show that Travelers acted improperly, which was its burden under Indiana Code Section 34–52–1–1. Thus, we deny Maplehurst's request for attorney's fees.

## CONCLUSION

In light of our discussion above, we conclude that the trial court erred in granting Maplehurst's motion for summary judgment with regard to the pre-notice costs and expenses that Travelers was ordered to pay. However, Travelers remains liable for the costs and expenses under the provisions of the insurance policy that Maplehurst incurred after it notified Travelers of the claim. Finally, we conclude that the trial court properly denied Maplehurst's request for attorney's fees.

The judgment of the trial court is reversed and remanded with instructions

and for further proceedings consistent with this opinion.[5]

BRADFORD, J., concurs.

MAY, J., dissents with opinion.

MAY, Judge, dissenting.

I believe the trial court correctly addressed whether Maplehurst's delay in notifying Travelers was reasonable, and nothing in *Dreaded* relieved the trial court of that obligation or otherwise made that analysis inappropriate. I must therefore respectfully dissent.

Our Indiana Supreme Court has explicitly addressed the significance of whether an insured's delay in notifying the insurer is reasonable:

The requirement of prompt notice gives the insurer an opportunity to make a timely and adequate investigation of all the circumstances surrounding the accident or loss. This adequate investigation is often frustrated by a delayed notice. Prejudice to the insurance company's ability to prepare an adequate defense can therefore be presumed by an *unreasonable* delay in notifying the company about the accident or about the filing of the lawsuit. This is not in conflict with the public policy theory that the court should seek to protect the innocent third parties from attempts by insurance companies to deny liability for some *insignificant* failure to notify. The injured party can establish some evidence that prejudice did not occur in the particular situation. Once such evidence is introduced, the question becomes one for the trier of fact to determine whether any prejudice actually existed. The insurance carrier in turn can present evidence in support of its claim of prejudice. Thus, both parties are able to put forth their respective positions in the legal arena.

*Miller v. Dilts,* 463 N.E.2d 257, 265–66 (Ind.1984) (emphasis added).

I would accordingly decline to adopt the majority's apparent premise that after *Dreaded,* reasonableness is no longer a permissible consideration in our analysis of late-notice disputes. Such a premise is inconsistent with the explicit language of the *Miller* decision, and nothing in the decision relied on by the majority, *Dreaded,* suggests reasonableness must, should, or can be disregarded.

Rather, it appears no "reasonableness" argument was raised in *Dreaded.*[6] The *Dreaded* Court's detailed recitation of the facts indicates Dreaded and IDEM were in touch about a possible violation for three and one-half years before Dreaded finally told its insurer there was an IDEM claim. Nothing in that decision indicates Dreaded

---

5. We also deny Maplehurst's motion to strike Travelers' reply brief. We grant Travelers's motion to strike Maplehurst's reply brief and supplemental appendix as to those sections that are not in compliance with the Indiana Rules of Appellate Procedure. In all other respects, Travelers's motion to strike Maplehurst's reply brief is denied. Finally, we deny Maplehurst's motion for leave to file a supplemental appendix that was filed after oral argument was held in this case.

6. After summarizing facts Maplehurst offered to support its argument that its delay was legally excused, the majority says, without citation, "it was also argued in *Dreaded* that the insured's delay was caused by the client's extended difficulties in identifying the relevant insurers and locating policy information. And none of these difficulties excused a three-year delay in *Dreaded.*" (Op. at 1161.)

There is no such argument in *Dreaded.* To the contrary, the *Dreaded* Court was explicit that Dreaded offered no excuse for its late notice: "It is important to first recognize what this case is *not* about.... Dreaded does not here contend ... that its failure to give notice is legally excused." 904 N.E.2d at 1272–73.

offered any justification, or even an explanation, for its delay in giving notice.[7]

It therefore seems apparent the *Dreaded* Court's silence regarding application of the *Miller* reasonableness standard to Dreaded's delay reflects only Dreaded's failure to assert facts and argument relevant thereto; it does not indicate the Court was implicitly overruling its reasonableness discussion in *Miller*. Nothing else in *Dreaded* suggests the Court meant to overrule or change the *Miller* holding, nor has our Indiana Supreme Court taken the opportunity to do so in subsequent decisions that addressed *Miller*, e.g., *Tri–Etch*.

The trial court therefore could (and properly did, as reflected in the majority's acknowledgement of the reasons for Maplehurst's delay, *see* Op. at 1155–56, 1160–61, and 1161 n. 3) determine that as a matter of law,[8] Maplehurst's delay was not significant or unreasonable.

Enforcement of a notice provision operates as a forfeiture because the insured loses his insurance coverage without regard to his dutiful payment of insurance premiums, *see, e.g., Roberts Oil Co., Inc. v. Transamerica Ins. Co.*, 113 N.M. 745, 833 P.2d 222, 230 (1992), and our Indiana Supreme Court has long recognized that forfeitures are disfavored by the law. *Skendzel v. Marshall*, 261 Ind. 226, 231, 301 N.E.2d 641, 644 (1973). In addition, summary judgment for Travelers in this case implicates the public policy our Supreme Court explicitly recognized in *Miller*—to protect innocent third parties from attempts by insurance companies to deny liability[9] for an "insignificant" failure to notify. 463 N.E.2d at 265.

Nothing in the *Dreaded* opinion suggests Dreaded's delay was "reasonable" or its failure to notify the insurer was "insignificant." In the case before us, by contrast, there was ample undisputed designated evidence of the reasonableness of Maplehurst's delay in notifying Travelers.

The *Dreaded* decision does not require summary judgment for Travelers, and

---

7. Rather, Dreaded argued it was "entitled to recover its pre-notice defense costs unless [the insurer] can prove that it was prejudiced by Dreaded's late notice," 904 N.E.2d at 1270, and our Indiana Supreme Court held the insurer "did not need to present any separate proof of prejudice to justify its failure to defend during the pre-notice period." *Id.* at 1273. This holding is consistent with *Miller*, which held "[p]rejudice to the insurance company's ability to prepare an adequate defense can therefore be presumed by an *unreasonable* delay in notifying the company about the accident or about the filing of the lawsuit." *Miller*, 463 N.E.2d at 265 (emphasis added).

8. "What is reasonable notice is a question of law for the court to determine when the facts are not in dispute." *Miller*, 463 N.E.2d at 263.

9. The majority acknowledges the *Dreaded* Court noted that "St. Paul was not seeking to avoid all its obligations under the policies." Op. at 1159–60. Rather, on receiving notice, St. Paul did "assume the defense of Dreaded." 904 N.E.2d at 1270. The majority then asserts, without citation, that "Travelers adduced both in its appellate brief and at oral argument that it was not seeking to avoid all its obligations under the policies." Op. at 1160.

I do not challenge the majority's characterization of such statements Travelers might have made, but I must question Travelers' assertion that it was not attempting to avoid all obligation to Maplehurst. *See, e.g.,* Appellant's Reply Brief at 4 n. 6 ("All of Maplehurst's expenses, both pre-tender and post-tender, are expenses Maplehurst obligated itself to pay prior to tender."); Op. at 1157–58 ("Century and American Economy also moved for summary judgment on cross-claims that they had filed against Travelers, seeking contribution with regard to defense costs they had incurred after the insurers received notice."). These facts indicate Travelers might, in fact, be "seeking to avoid all its obligations under the policies."

*Miller* does not permit it. I must therefore respectfully dissent.