# FOR PUBLICATION



FILED

Dec 19 2013, 9:08 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**BARRY C. COPE**
**KARL L. MULVANEY**
**KANDI KILKELLY HIDDE**
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GEORGE M. PLEWS**
**COLIN E. CONNOR**
Plews Shadley Racher & Braun LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| MERIDIAN MUTUAL INSURANCE COMPANY, n/k/a STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, ) ) ) ) | |
| Appellant-Defendant, ) | |
| vs. ) | No. 49A05-1210-PL-533 |
| ) | |
| MAJESTIC BLOCK & SUPPLY, INC., n/k/a TUTEWILER CORPORATION, ) ) ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David J. Dreyer, Judge
Cause No. 49D10-1004-PL-19686

**December 19, 2013**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

Meridian Mutual Insurance Company, n/k/a State Automobile Mutual Insurance Company ("State Auto") appeals a summary judgment for Majestic Block & Supply, Inc. n/k/a Tutewiler Corporation ("Majestic"). State Auto presents the following issues for our review:

1. Whether the "known loss" clause of the insurance contract bars Majestic's recovery;

2. Whether Majestic's recovery was barred by late notice to State Auto of Majestic's environmental claim;

3. Whether Majestic received double recovery of its post-notice costs; and

4. Whether the trial court abused its discretion when it ordered State Auto to pay pre-judgment interest.

Majestic cross-appeals, arguing the trial court should have granted Majestic's request for attorney fees.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Majestic manufactured concrete blocks in Mooresville for fifty years. In 1972, Majestic installed a 10,000-gallon underground storage tank (UST) and dispensing pumps to provide diesel fuel for its delivery vehicles. On November 14, 1997, Majestic told the Indiana Department of Environmental Management (IDEM) it intended to permanently close the tank. IDEM directed Majestic to comply with IDEM's 1995 UST Site Closure Guidelines.

Majestic hired Swinney Brothers Excavating to remove the UST, and Swinney hired 3D Enterprises to assist with the removal. On December 16, 1997, 3D removed the tank according to IDEM's guidelines. A day later, 3D took soil samples from the site and noted the "sample results [are] potentially contaminated by general site conditions." (App. at 660.)

On January 1, 1998, Majestic bought a commercial general liability policy from State Auto for the term of one year. On January 13, 1998, 3D issued a UST Site Closure Report to IDEM, stating:

> Due the [sic] location of the tank pit, over excavation was not a good alternative at this time, based on the high levels, and location of the soil contamination. We would recommend an Initial Site characterization (ISC) to determine a feasible Corrective Action Plan (CAP). No ground water encountered at a depth of fourteen feet.

(*Id*. at 628.) No further action was taken regarding the site for almost a decade.

In February 2006, IDEM requested a site investigation. On September 22, 2006, IDEM issued a violation letter to Majestic based on the soil contamination on the site and told Majestic to address the contamination issues within 45 days. Majestic hired Alt & Witzig Engineering, Inc., who submitted a report to IDEM on January 3, 2007, based on soil samples taken November 9, 2006. Those samples revealed TPH ERO[1] contamination above industrial cleanup levels. The report indicated the groundwater on the site contained various other chemicals of concern in levels above residential cleanup levels; two were above industrial cleanup levels.

---

[1] TPH is total petroleum hydrocarbon. ERO is extended range organics. http://www.in.gov/idem/4299.htm (last visited November 6, 2013).

Cleanup continued, and in October 2007, Majestic applied for reimbursement of the cleanup costs from IDEM's Excess Liability Trust Fund (ELTF). IDEM indicated it would pay 91% of Majestic's reimbursable costs, minus the ELTF's $35,000 deductible. However, no money was reimbursed at that time, and the IDEM response indicated the ELTF would not reimburse Majestic until a CAP was filed.

On July 15, 2009, Majestic filed a claim with State Auto for coverage for the cleanup costs at the tank site. State Auto denied the claim based on "Known Loss or Loss-in-Progress" and "Late Notice and Pre-tender Fees and Expenses." (*Id*. at 317.) Majestic brought a complaint against State Auto for declaratory judgment and damages, seeking coverage for its cleanup costs. In the meantime, Majestic filed a CAP with IDEM, which was required for reimbursement from the ELTF.

The trial court granted partial summary judgment for Majestic and partial summary judgment for State Auto, finding coverage under the State Auto policy was not barred by the "known loss" or "voluntary payment" provisions, coverage was for post-notice costs only, Majestic Block may be entitled to pre-judgment interest, and the State Auto policy provided no personal injury coverage for the claim. (App. at 21-22.) The trial court stayed the issue of the application of the modified absolute pollution exclusion in the State Auto policy pending our Indiana Supreme Court's decision in *State Auto. Mut. Ins. Co. v. Flexdar*, *Inc.*, 764 N.E.2d 845 (Ind. 2012), *reh'g denied*. *Flexdar* was decided in March 2012, and shortly thereafter both parties moved for summary judgment.

On September 28, 2012, the trial court entered its Order Lifting Stay, Entering Final

4

Judgment, and Denying Attorneys Fees for Plaintiff, ordering State Auto to pay Majestic post-notice costs of $33,367.85 plus all tendered subsequent and future costs and prejudgment interest on that amount from October 11, 2011.

## DISCUSSION AND DECISION

### 1. Summary Judgment

Our standard for reviewing a summary judgment was set forth in *Dugan v. Mittal Steel USA, Inc.*, 929 N.E.2d 184, 185-86 (Ind. 2010):

> A party is entitled to summary judgment upon demonstrating the absence of any genuine issue of fact as to a determinative issue unless the non-moving party comes forward with contrary evidence showing an issue of fact for trial. An appellate court reviewing a trial court summary judgment ruling likewise construes all facts and reasonable inferences in favor of the non-moving party and determines whether the moving party has shown from the designated evidentiary matter that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. But a *de novo* standard of review applies where the dispute is one of law rather than fact.

As construction of the terms of a written contract presents a pure question of law, our review is *de novo*. *Harrison v. Thomas*, 761 N.E.2d 816, 818 (Ind. 2002). Moreover, the proper interpretation of an insurance policy, even if it is ambiguous, generally presents a question of law that is appropriate for summary judgment. *Bosecker v. Westfield Ins. Co.*, 724 N.E.2d 241, 243 (Ind. 2000).

### A. Known Loss

State Auto first argues Majestic's recovery is barred by the "known loss" doctrine. That doctrine bars coverage if "an insured has actual knowledge that a loss has occurred, is occurring or is substantially certain to occur on or before the effective date of the policy."

5

*Gen. Housewares Corp. v. Nat'l Sur. Corp.*, 741 N.E.2d 408, 414 (Ind. Ct. App. 2000). The

burden of proving the loss was known is on the party seeking to avoid coverage," *id.*, here,

State Auto.

The trial court rejected the "known loss" defense:

> State Auto's policy took effect on January 1, 1998. Field tests were taken on December 19, 1997, which noted possible contamination. Samples were sent to the laboratory for confirmatory testing. The results confirming contamination were received in January 1998, <u>after</u> State Auto's policy incepted and Majestic Block's consultant reported the results to IDEM in 1998. IDEM did not respond, and did not request any further action until eight years later, in 2006.
>
> These facts do not support a known loss defense. First, Majestic Block's consultant did not learn of the results of laboratory test noting contamination until January 6, 1998, after the State Auto policy incepted. Second, IDEM itself took no action for eight years, which shows a lack of certainty of liability or even regulatory interest. Third, Majestic Block itself did not learn of the release or, more importantly, that IDEM claimed a cleanup was required until 2006. But even if Majestic is presumed to know of possible contamination in December 1997, this is not enough for a "known loss." Majestic Block was not "substantially certain" that a liability existed or was even claimed until the policy was in effect.

(App. at 17-18.) The trial court relied on the definitions set forth in *General Housewares*

regarding the level of certainty required for the "known loss" doctrine to avoid insurance

policy coverage. We do the same, and we come to the same conclusion.

Under *General Housewares*, the "known loss" doctrine applies to avoid insurance

coverage when an insured has actual knowledge a loss: (1) has occurred, (2) is occurring, or

(3) is substantially certain to occur. *General Housewares*, 741 N.E.2d at 414. As noted in

the trial court's finding, the laboratory results from the soil sample were not known until after

the policy had commenced. Even if preliminary results indicated contamination, the ultimate

6

results apparently were not significant enough to warrant an IDEM investigation until 2006. For the loss to be "substantially certain" to occur, the loss must be "not only likely to occur, but . . . virtually inevitable. The inquiry should be more of temporality than probability – when an event will occur, not whether an event will occur." *Id.*

Based on IDEM's inaction after the 1998 report and for almost a decade after another sample was taken at the site, we cannot say the "known loss" doctrine applies; the ultimate loss had not occurred, was not occurring, and was not substantially certain to occur at the time State Auto and Majestic Block entered into the insurance contract.

### B. Late Notice

Nor is Majestic is barred from recovery under the late notice doctrine. The insurance contract provides:

2. Duties In The Event of Occurrence, Offense, Claim or Suit
a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
(1) How, when and where the "occurrence" or offense took place;
(2) The names and addresses of any injured persons and witnesses; and
(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.
b. If a claim is made or "suit" is brought against any insured . . . [y]ou must see to it that we receive prompt written notice of the claim or "suit" as soon as practicable.
c. You and any other involved insured must:
(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
(2) Authorize us to obtain records and other information;
(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and
(4) Assist us, upon our request, in the enforcement of any right

7

> against any person or organization which may be liable to the insured because of injury or damages to which the insurance may also apply.
> d.      No Insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

(App. at 197.) Majestic Block first learned of confirmed contamination of the closed site in 1998, was not required by IDEM to take action until 2006, and gave State Auto notice of its claim in 2009.

Normally, the late notice doctrine bars coverage for an insured who delays reporting a claim when the insurance company suffers prejudice because of that delay. *Tri-Etch, Inc. v. Cincinnati Ins. Co.*, 909 N.E.2d 997, 1005 (Ind. 2009), *reh'g denied*. "[P]rejudice to the insurer is presumed by the insured's late notice, but the insured may rebut the presumption with evidence showing that the late notice created no prejudice." *Id*. The trial court did not address whether Majestic's late notice resulted in prejudice. Instead, it followed our Indiana Supreme Court's decision in *Dreaded Inc. v. St. Paul Guardian Insurance Co.*, 904 N.E.2d 1267, 1273 (Ind. 2009), and our subsequent decision applying *Dreaded*, *Travelers Ins. Companies v. Maplehurst Farms, Inc.*, 953 N.E.2d 1153 (Ind. Ct. App. 2011), *reh'g denied, trans. denied*.

The facts in *Dreaded* are similar to those before us. In 2000, Dreaded received notice from IDEM demanding the investigation and cleanup of possible soil contamination on a former business site. Dreaded responded to the demand, and hired an attorney and a contractor to protect its interests during the process. The contractor investigated the site, and

forwarded two reports, one from 2001 and one from 2002, to IDEM regarding the soil contamination. In 2003, IDEM ordered Dreaded to conduct further investigation and "provide a full delineation of the contamination." *Dreaded*, 904 N.E.2d at 1269.) In March 2004, almost four years after receiving notice from IDEM, Dreaded contacted its insurer, St. Paul, to make a claim under its policy for all costs up to that point and all costs going forward.

St. Paul told Dreaded it would pay all costs going forward from the date it received notice of the claim, but not pre-notice costs. Based on St. Paul's acceptance of responsibility for post-notice costs, our Indiana Supreme Court distinguished a series of decisions in which the insurance company explicitly denied any coverage based on late notice. In those decisions, it was required that the insurer show it was prejudiced by the late notice, usually by the insurer's failure to rebut the presumption of prejudice. *See Miller v. Dilts*, 463 N.E.2d 257, 265-66 (Ind. 1984) (prejudice will "be presumed from an unreasonable delay in notifying the company;" but that presumption may be rebutted by the insured's presentation of evidence demonstrating insurer was not prejudiced by late notice.)

In addition, our Indiana Supreme Court explicitly distinguished fact patterns that were not applicable to its holding in *Dreaded*:

> It is important to first recognize what this case is not about. Dreaded is not seeking reimbursement for defense costs it incurred because St. Paul refused to defend after receiving notice of the IDEM claim. *See, e.g., Walton v. First Am. Title Ins. Co.*, 844 N.E.2d 143, 146–49 (Ind. Ct. App .2006), *trans. denied*. Dreaded is not seeking indemnity for a damages judgment entered against it because St. Paul failed to defend after notice. *See, e.g., Stevenson v. Hamilton Mut. Ins. Co.*, 672 N.E.2d 467 (Ind. Ct. App. 1996), *trans. denied*. Dreaded does not here contend that it provided a timely notice of claim that,

9

while defective in some respect, nevertheless substantially complied with the policy requirements or that its failure to give notice is legally excused. *See, e.g., Commercial Underwriters Ins. Co. v. Aires Envtl. Servs., Ltd*., 259 F.3d 792, 796 (7th Cir. 2001). Nor is this case about whether St. Paul had sufficient constructive notice from other sources to trigger its duty to defend notwithstanding a lack of notice directly from Dreaded. *See, e.g., Frankenmuth Mut. Ins. Co. v. Williams*, 645 N.E.2d 605 (Ind. 1995); *Wolf Lake Terminals, Inc. v. Mut. Marine Ins. Co*., 433 F.Supp.2d 933, 951-52 (N.D. Ind. 2005) (collecting cases); *Brandon v. Nationwide Mut. Ins. Co*., 97 N.Y.2d 491, 743 N.Y.S.2d 53, 769 N.E.2d 810 (2002).

*Id*. at 1272-73. Those fact patterns are also distinguishable here. State Auto, in its response to Majestic's notice of claim, stated: "State Auto received notice of this claim on July 30, 2009. Any costs or expenses incurred prior to the date of notice are not covered." (App. at 318.) Majestic, in its complaint, took that statement to mean State Auto would not pay any of the claim, but that is not what State Auto said in its reply letter.

Dreaded did not comply with the notice requirement because it did not provide St. Paul with a notice of its claim until three years after it became aware of IDEM's environmental claim. *Id*. at 1273. Because of that delay, the Court held St. Paul could not be required to defend a claim of which it had no knowledge and affirmed the trial court's summary judgment for St. Paul. *Id*.

Here, Majestic learned in late 1997 or early 1998 there might be contamination, and IDEM did nothing to require action until 2006. State Auto indicated it would not pay pre-notice costs, and did not explicitly indicate whether it would pay post-notice costs. Because there was not a complete denial of coverage, *Dreaded* applies, and summary judgment ordering State Auto to pay only Majestic's post-notice costs was appropriate.

10

C.     Double Recovery

Majestic applied for reimbursement of the cleanup costs from the ELTF, and IDEM indicated it would pay 91% of Majestic's reimbursable costs, minus the ELTF's $35,000 deductible.  The trial court ordered State Auto to pay Majestic's post-notice costs in the amount of $33,367.85 plus all tendered subsequent and future costs and prejudgment interest on that amount from October 11, 2011.  It did not address in its order the effect of Majestic's recovery from the ELTF or the $35,000 deductible.

On appeal, State Auto argues Majestic received a double recovery because almost all of Majestic's post-notice costs were reimbursed by the ELTF. Because the purpose of insurance is to indemnify, double recovery by an insured is prohibited even when multiple policies apply to a loss.  *Wagner v. Yates*, 912 N.E.2d 805, 812 (Ind. 2009).

As of July 16, 2012, the date of State Auto's summary judgment motion, Majestic had incurred total cleanup costs of $74,389.46.[2]  The ELTF deductible was $35,000, so Majestic could recover from the ELTF $36,844.41, which is 91% of the amount over the deductible. Therefore, the amount of its total costs that Majestic could *not* recover from the ELTF is $38,545.05, which represents the $35,000 deductible plus the nine percent of its costs in excess of the deductible.

State Auto asserts almost all of Majestic's post-notice costs were paid by the ELTF.

---

[2]  State Auto asserts Majestic is not entitled to "full recovery" because "it intentionally violated the policy's notice provisions and the trial court correctly ruled that part of its loss was uncovered." (Cross-Appellee's Br. and Reply Br. of Appellant Meridian Mutual Insurance Company, n/k/a State Automobile Mutual Insurance Company (hereinafter "State Auto Reply Br.") at 11.)  The trial court did rule State Auto was not obliged to cover costs incurred before Majestic provided it notice.  But as explained above, we agree with the trial court that Majestic did not "intentionally violate the policy's notice provisions."

11

That argument is premised in large part on evidence "$36,131.34 of [Majestic's] costs (including the $35,000 ELTF deductible) were incurred prior to notice and $23,327.95 were incurred after notice, but Majestic sought only 9% of those post-notice costs, which totaled $2,099.52, plus prejudgment interest." (Br. of Appellant Meridian Mutual Insurance Company, n/k/a State Automobile Mutual Insurance Company, hereinafter "State Auto Br." at 15.)

We decline to reverse based on a characterization of the payments from the ELTF or Majestic's responsibility for its deductible amount as pre-notice or post-notice. The ELTF is not an insurance contract pursuant to which the date of notice might be determinative of coverage. Rather, it was established to, among other things, provide "a source of money to satisfy liabilities incurred by owners and operators of underground petroleum storage tanks under IC 13-23-13-8 for corrective action." Ind. Code § 13-23-7-1. State Auto cannot avoid coverage for the ELTF deductible amount by assigning ELTF funds to a period before its policy took effect.

If Majestic recovers from State Auto all of its post-notice costs, it will have ultimately recovered slightly *less* than the total expense it incurred to clean up the site. We decline to characterize that less-than-full recovery as "double," and State Auto may not avoid coverage on that basis.

It has long been our law that:

An insurance policy should be so construed as to effectuate indemnification to the insured or his dependent beneficiary against loss, rather than to defeat it. Where any reasonable construction can be placed on a policy that will prevent

12

the defeat of the insured's indemnification for a loss covered by general language, that construction will be given.

*Masonic Acc. Ins. Co. v. Jackson*, 200 Ind. 472, 482, 164 N.E. 628, 631 (1929) (citations omitted). Characterizing the entire ELFT deductible amount as "pre-notice" would defeat indemnification to State Auto's insured. This was not "double recovery."

2. <u>Prejudgment Interest</u>

The trial court awarded Majestic prejudgment interest "from the date of notice to October 11, 2011 on the amount of $33,367.85." (App. at 12.) The award was not an abuse of the trial court's discretion.

Prejudgment interest may be awarded where the amount of damages can be ascertained by simple mathematical computation and has been allowed even where some degree of judgment must be used to measure damages. *Hayes v. Chapman,* 894 N.E.2d 1047, 1054 (Ind. Ct. App 2008), *trans. denied.* The "ascertainable" standard refers to the amount of damages as distinguished from the liability for those damages. *Ind. Indus. v. Wedge Prods., Inc.,* 430 N.E.2d 419, 427 (Ind. Ct. App. 1982).

We review a ruling on a request for prejudgment interest for an abuse of discretion. *Inman v. State Farm Mut. Auto. Ins. Co.,* 981 N.E.2d 1202, 1204 (Ind. 2012). An abuse of discretion occurs when a decision is clearly against the logic and effects of the facts and circumstances before the court or if the court has misinterpreted the law. *Id.* We consider only the evidence favorable to the judgment. *Johnson v. Eldridge,* 799 N.E.2d 29, 33 (Ind. Ct. App. 2003), *reh'g denied, trans. denied.*

13

State Auto argues Majestic is not entitled to prejudgment interest because the amount of Majestic's claim was not ascertainable from the terms of its insurance contract with State Auto. The amount was ascertainable, and it was ascertained. State Auto relies on a recent statement from this court that "[p]rejudgment interest is appropriate in a breach of contract action when 'the amount of the claim rests upon a simple calculation and the terms of the contract make such a claim ascertainable.'" *Kummerer v. Marshall,* 971 N.E.2d 198, 201 (Ind. Ct. App. 2012) (quoting *Olcott Int'l & Co. v. Micro Data Base Sys., Inc.,* 793 N.E.2d 1063, 1078 (Ind. Ct. App. 2003), *trans. denied*)**,** *reh'g denied, trans. denied.*

*Kummerer* does not control. Marshall and Kummerer were attorneys, and Marshall agreed to take over four of Kummerer's cases while Kummerer was suspended from the practice of law. They agreed they would split equally any contingent fees recovered without a trial. Three of the four cases were resolved without incident, but when the fourth case settled, Marshall asserted that he should receive 90% of the fee. Kummerer disagreed, and Marshall filed suit. Kummerer prevailed at trial, but the court denied his request for prejudgment interest and we affirmed. We noted that the trial court had to look beyond the face of the parties' fee splitting agreement and decide whether the parties' forecast of the amount of work each would do in the case was reasonable under Indiana Professional Conduct Rule 1.5(a) and (e). This decision required an exercise of judgment, and thus prejudgment interest was inappropriate.

By contrast, the case before us does not involve fee splitting or forecasting what work would be done in the cases. Instead, Majestic submitted to the court evidence showing the

14

costs it incurred for the cleanup of the site. Consequently, *Kummerer* does not mandate reversal of the trial court's judgment.

It is not always a prerequisite to the allowance of prejudgment interest that the amount of the damages be liquidated. *Travelers Indem. Co. v. Armstrong*, 442 N.E.2d 349, 365 (Ind. 1982). Rather, the test as to whether interest should be allowed before judgment in a given case is not "whether the damages are unliquidated or otherwise, but whether the injury and consequent damages are complete and must be ascertained as of a particular time and in accordance with fixed rules of evidence and known standards of value, which the court or jury must follow in fixing the amount." *Id*. at 365-66 (quoting *Fell v. Union Pac. Ry. Co.,* 88 P. 1003, 1007 (Utah 1907)). The trial court in the case before us so ascertained the damages, and we cannot find the award of prejudgment interest an abuse of discretion.

3.      Majestic's Attorney Fees

Ind. Code § 34-52-1-1(b) provides:

In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:
(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
(3) litigated the action in bad faith.

The trial court found Majestic had not met "Indiana's long-standing high burden to merit award of attorney fees for frivolous, unreasonable, or groundless claims," (App. at 11), and we agree.

15

We review under an abuse of discretion standard the decision whether to award attorney's fees. *Maplehurst,* 953 N.E.2d at 1162. A defense is "frivolous" if it is advanced primarily for the purpose of harassment, if counsel is unable to make a good faith and rational argument on the merits of the action, or if counsel cannot support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law. *Id.* A claim or defense is "unreasonable" if, based on the totality of the circumstances, including the law and the facts known at the time of filing, no reasonable attorney would consider that the claim or defense was worthy of litigation. *Id.* A defense is "groundless" if no facts exist that support the legal claim presented by the losing party. *Id.* A trial court is not required to find an improper motive to support an award of attorney fees; rather, an award may be based solely on the lack of a good faith and rational argument in support of the claim. *Id.*

Although the trial court ultimately found most of State Auto's claims to be without merit, and we have affirmed, we cannot find its defenses are unreasonable or so lacking in factual or authoritative support that they are frivolous, unreasonable, or groundless. The fact that a party's legal argument to the trial court fails is not dispositive; a claim or defense is not groundless or frivolous merely because the party loses on the merits. *Smyth v. Hester*, 901 N.E.2d 25, 35 (Ind. Ct. App. 2009), *trans. denied*. We further note State Auto did prevail below to the extent it argues Majestic could not recover its pre-notice costs.

As for the substance of State Auto's arguments, we cannot characterize any as "baseless." While we find its arguments unpersuasive, State Auto supported its arguments

16

with cogent reasoning and legal authority. Its defenses were "consistent with reasonable advocacy," *Ballaban v. Bloomington Jewish Cmty., Inc.*, 982 N.E.2d 329, 340 (Ind. Ct. App. 2013), and the denial of Majestic's request for attorney fees was not an abuse of discretion.

## CONCLUSION

Majestic's coverage was not barred by late notice or known loss, it did not benefit from a double recovery, and it was entitled to prejudgment interest. However, we cannot characterize State Auto's arguments as so frivolous, unreasonable, or groundless as to require an award of attorney fees to Majestic. We accordingly affirm the trial court.

Afffirmed.

BAKER, J., and MATHIAS, J., concur.