# FOR PUBLICATION



ATTORNEYS FOR APPELLANTS:

**DAVID W. CRAIG**
**SCOTT A. FAULTLESS**
Craig Kelley & Faultless LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**ANDREW T. GLIER**
State Auto Insurance House Counsel
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| DARLISS WERT and<br>GARY WERT, | ) | |
| | ) | |
| Appellants/Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 15A01-1306-CT-252 |
| MERIDIAN SECURITY<br>INSURANCE COMPANY, | ) | |
| | ) | |
| Appellee/Defendant. | ) | |

APPEAL FROM THE DEARBORN SUPERIOR COURT
The Honorable Jonathan N. Cleary, Judge
Cause No. 15D01-1202-CT-8

**November 14, 2013**

**OPINION - FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Gary and Darliss Wert (collectively "the Werts") were involved in a car accident with Barbara Offill. After settling with Offill for $100,000, the limit of her liability insurance, the Werts sued their insurance company, Meridian Security Insurance Company ("Meridian")[1], for an underinsured-motorist claim more than two years after the accident. Meridian filed a motion for summary judgment, claiming that the contract barred the Werts from filing a lawsuit against them more than two years after the accident. The Werts appeal from the trial court's order granting summary judgment to Meridian. They argue that the contract is ambiguous because the two-year contractual limitation provision conflicts with another provision in the contract requiring full compliance with the contract. To comply with the full-compliance provision of the contract, the Werts were required to settle or obtain a judgment before filing a lawsuit against Meridian. Finding that these provisions, when read together, make it unclear when the Werts should have filed a lawsuit to preserve their underinsured-motorist claim and may completely foreclose their ability to file a lawsuit, we reverse.

**Facts and Procedural History**

Meridian issued a car insurance policy to Gary, effective from December 20, 2008 to June 20, 2009. Appellants' App. p. 27. On January 16, 2009, Darliss was injured in a car accident caused by Offill's negligent driving. In February 2009, the Werts' attorney, Deborah McKenery notified Meridian that the Werts might file an underinsured-motorist claim under their policy. In March 2010, after learning that Offill had only $100,000 of

---

[1] Meridian is also known as State Auto Insurance. Appellants' App. p. 35.

liability insurance, McKenery informed Meridian that the Werts had an underinsured-motorist claim and told Meridian that she was ordering records and reports to submit to the insurance company. *Id.* at 98.

In December 2010, Offill's insurance company, Auto-Owners Insurance Company ("Auto-Owners"), offered the Werts $100,000, the full amount of Offill's insurance policy. Auto-Owners also included proof-of-insurance coverage because Auto-Owners knew the Werts would be making an underinsured-motorist claim against Meridian. In exchange for Auto-Owner's extension of the full amount of coverage, Auto-Owners requested that McKenery obtain a waiver of subrogation rights from Meridian for Darliss's medical payments and underinsured-motorist claims. McKenery then submitted to Meridian a demand of $400,000 for underinsured bodily injury benefits.

In January 2011, a Meridian representative, Brandi Giger, directly informed Darliss that Meridian was processing their insurance claim and that Meridian required Medicare information, which Darliss later provided. The next day, Giger sent McKenery a letter stating that McKenery must either "reach a settlement agreement with us or file a lawsuit against our insured." *Id.* at 109. McKenery thought the letter was erroneously sent because she knew she could not file a lawsuit against her own client. *Id.* at 91. Instead, she believed that the letter was intended to confirm the conversation she had the previous day with the Meridian representative of the need to file suit to protect the Werts' third-party claim from being barred by the statute of limitation. *Id.*

The same day, McKenery filed a lawsuit in Dearborn Superior Court against Offill to prevent the Werts' claim from being time-barred by the statute of limitation. *Id.* at 136-

3

38. A few days later, Meridian informed McKenery that it was waiving its subrogation rights against Auto-Owners and authorized the Werts to accept the $100,000 offer to resolve their third-party tort claim against Offill. *Id.* at 110.

On January 18, 2011, McKenery sent a letter to Auto-Owners confirming that Meridian was waiving its subrogation rights. She enclosed a copy of the lawsuit filed against Offill and requested the $100,000 settlement check. *Id.* at 139. McKenery also sent this letter to Giger, who was assisting with the underinsured-motorist claim. According to McKenery, the settlement money from Auto-Owners was not available to the Werts until early February 2011. *Id.* at 92. In February 2011, McKenery gave Meridian a copy of the release executed by the Werts, and McKenery filed a motion to dismiss the lawsuit against Offill the next day. *Id.* at 92, 112, 142-43.

In March 2011, Penni Nixon, another representative at Meridian, informed McKenery that she was assigned to review the Werts' underinsured-motorist claim and would contact her once she finished reviewing the claim. *Id.* at 113. In June 2011, McKenery told Nixon that she was getting an update from Darliss's doctor and would like to settle the case.

In August 2011, Meridian set its reserves on the Werts' underinsured-motorist claim. *Id.* at 133. McKenery gave Meridian more medical information in support of their claim in both August and November. In November, McKenery also told Meridian that she wanted to resolve the Werts' underinsured-motorist claim either through settlement, mediation, or arbitration. *Id.* at 119. In December 2011, Meridian offered $5000 to McKenery to settle the Werts' underinsured-motorist claim. *Id.* at 134.

4

On February 24, 2012, more than two years after the date of the accident, the Werts filed a complaint in Dearborn Superior Court seeking underinsured-motorist benefits under Meridian's policy. *Id.* at 5-10. Meridian filed its answer and affirmative defenses in May 2012. *Id.* at 11-16. The same day, Meridian also filed a motion for summary judgment, arguing that it was entitled to summary judgment because the claim was filed after the expiration of the contractual limitation period. *Id.* at 17-18. In May 2013, the trial court granted Meridian's motion for summary judgment. *Id.* at 4.

The Werts now appeal.

## Discussion and Decision

The Werts claim that the contractual limitation provision is ambiguous, Meridian is estopped from asserting the contractual limitation provision, and the contractual limitation provision is unenforceable. We consider only the ambiguity of the contractual limitation provision because we find it dispositive.

When reviewing summary judgment, we apply the same standard of review as the trial court. *Presbytery of Ohio Valley, Inc. v. OPC, Inc.*, 973 N.E.2d 1099, 1110 (Ind. 2012). Summary judgment is appropriate where the designated evidence "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). When a party appeals the denial of summary judgment, the appealing party "carries the burden of persuading this court that the trial court's decision was erroneous." *Ill. Bulk Carrier, Inc. v. Jackson*, 908 N.E.2d 248, 253 (Ind. Ct. App. 2009), *trans. denied*. If the issue presented is purely a question of law, the

5

Court's review is *de novo*. *Buchanan v. HSBC Mortg. Servs., Inc.*, 993 N.E.2d 275, 278 (Ind. Ct. App. 2013).

In general, "[i]nsurance policies are governed by the same rules of construction as other contracts . . . ." *Peabody Energy Corp. v. Roark*, 973 N.E.2d 636, 640 (Ind. Ct. App. 2012), *aff'd on reh'g*, 978 N.E.2d 503 (Ind. Ct. App. 2012), *trans. denied*. However, because of the disparity in bargaining power between insurance companies and insureds, courts have developed distinct rules for those contracts. *Auto-Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1283 (Ind. 2006). When interpreting an insurance contract, "if an insurance contract is clear and unambiguous, the language therein must be given its plain and ordinary meaning." *Castillo v. Prudential Prop. and Cas. Ins. Co.*, 834 N.E.2d 204, 206 (Ind. Ct. App. 2005). The mere fact that a controversy exists and the insured asserts an interpretation contrary to that asserted by the insurer is insufficient to establish an ambiguity. *Shelter Ins. Co. v. Woolems*, 759 N.E.2d 1151, 1155 (Ind. Ct. App. 2001), *trans. denied*.

If an ambiguity exists, "insurance policies are to be construed strictly against the insurer and the policy language is viewed from the standpoint of the insured." *Id.* This is especially important "where the language in question purports to exclude coverage." *State Auto. Mut. Ins. Co. v. Flexdar, Inc.*, 964 N.E.2d 845, 848 (Ind. 2012). Insurers may limit coverage, "but such limitations must be clearly expressed to be enforceable." *Id.*

This Court "must accept an interpretation of the contract language that harmonizes the provisions rather than one which supports a conflicting version of the provisions." *Castillo*, 834 N.E.2d at 206 (citing *Burkett v. Am. Family Ins. Grp.*, 737 N.E.2d 447, 452

(Ind. Ct. App. 2000)).  A court should construe the language of an insurance policy so as not to render any words, phrases, or terms ineffective or meaningless.  *FLM, LLC v. Cincinnati Ins. Co.*, 973 N.E.2d 1167, 1174 (Ind. Ct. App. 2012), *trans. denied*.

The Werts argue that the contractual limitation provision is ambiguous when read with the full-compliance provision of the contract.  Relevant portions of the contract state:

## PART F – GENERAL PROVISIONS

\* \* \*

## LEGAL ACTION AGAINST US

No legal action may be brought against us until there has been full compliance with the terms of this policy.

Appellants' App. p. 46.

## AMENDMENT OF POLICY PROVISIONS

The Provision or Condition titled **Legal Action Against Us** is amended by the addition of the following:

Under **Uninsured or Underinsured Motorist Coverage** of this policy, if provided, no legal action or arbitration proceeding may be brought against us unless the action or proceeding is begun within two years of the date of the accident.

*Id.* at 57.

## ENDORSEMENT
## UNDERINSURED MOTIRIST COVERAGE –
## INDIANA

With respect to coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

**INSURING AGREEMENT**

A.  We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":

1.  Sustained by an "insured"; and
2.  Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle." We will pay damages under this coverage caused by an accident with an "underinsured motor vehicle" only if 1. or 2. below applies:

1.  The limits of liability under any bodily injury liability bonds or policies applicable to the "underinsured motor vehicle" have been exhausted by payments of judgments or settlements; or
2.  A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle" and we:

   a.  Have been given prompt written notice of both the tentative settlement and certification of the liability coverage limits of the owner or operator of the "underinsured motor vehicle"; and
   b.  Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

*Id.* at 68.

The insurance contract in this case explicitly states that no legal action will be permitted against the insurance company unless there has been "full compliance with the terms of this policy." *Id.* at 46. The restriction is amended by only allowing a lawsuit to be brought against the insurance company as long as it is brought within two years of the date of the accident.

The two-year restriction is in direct conflict with the endorsement amending the requirements of the underinsured-motorist coverage. There, the policy states that damages will be paid only if the limits of liability "have been exhausted by payments of judgments or settlements" or if there has been a tentative settlement made between the policyholder and the underinsured motorist. *Id.* at 68. In other words, Meridian will not pay

8

underinsured-motorist benefits to its policyholder until the claim has either been resolved or settled with the underinsured motorist.

Meridian's policy prohibits the Werts from filing any lawsuit against it for an underinsured-motorist claim until the limits of Offill's liability coverage have been exhausted. At the same time, Meridian attempts to prevent the Werts from filing more than two years after the date of the accident, potentially requiring them to file a lawsuit before they are in full compliance with the policy. Unless a policyholder settles with an underinsured motorist within two years of the collision, these provisions are in direct conflict and therefore ambiguous.

That is exactly what happened in this case. Offill's settlement was not available to the Werts until February 2011. *Id.* at 92. The two-year anniversary of the collision, however, was on January 16, 2011. In December 2010, Auto-Owners extended a settlement offer to the Werts. On January 18, 2011, two days after the two-year anniversary of the collision, McKenery sent a letter to Auto-Owners, accepting the settlement.

Neither party argues that there was a tentative settlement between Auto-Owners and the Werts. Even under the requirements of a tentative settlement, the Werts would have been unable to comply with the requirements of the contract. In addition to agreeing to a tentative settlement, Meridian requires prompt written notice of the tentative settlement and certification of the liability coverage limits. Meridian also requires payment to the insured, the Werts in this case, of the amount equal to the tentative settlement within thirty days after receipt of the notification. Meridian did not receive notification from McKenery until January 18, two days after the two-year anniversary of the collision. Thus, whether

9

the settlement was considered tentative or not, it would have been impossible for the Werts to comply with the full-compliance provision before the two-year anniversary of the collision.

This Court cited with approval a decision by the Iowa Supreme Court describing the same problem faced by the Werts in *Clevenger v. Progressive Northwestern Insurance Co.* In that case, the Iowa Supreme Court stated that the contract was ambiguous "as to whether an insured must first pursue a claim to recover the limits of the tortfeasor's liability coverage prior to filing suit against the insurer for UIM benefits." 838 N.E.2d 1111, 1117 (Ind. Ct. App. 2005) (quoting *Hamm v. Allied Mut. Ins. Co.*, 612 N.W.2d 775 (Iowa 2000)).[2] In *Clevenger*, the contract did not specify when the contractual limitation period would begin, yet it required the parties to exhaust coverage held by the tortfeasor before filing their underinsured-motorist claim. Although *Clevenger* is distinguishable from this case, we find footnote seven in the opinion to be instructive:

> Progressive urges that it is incumbent upon the insureds to file suit against Progressive . . . prior to the end of the contractually truncated period for bringing such a claim whether or not the insured knows of the existence of an actual claim because the insured is forever foreclosed from bringing the suit two years after the collision. While we are unprepared to find an ambiguity based upon the "unfairness" of foreclosing a lawsuit before it could be known, neither will we countenance such a strained reading of the contract to require a lawsuit based upon speculation that one could arise. Moreover, we fail to see the wisdom in urging insureds to bring wholly unsupported legal actions . . . . Further, Indiana Professional Code Rule 3.1 mandates that lawyers "shall not bring . . . a proceeding . . . unless there is a basis for doing so that is not frivolous . . . ." *See also* Ind. Trial Rule 11 (requiring counsel to verify "that to the best of his knowledge, information

---

[2] In *Hamm*, the issue was that the contract did not explicitly state when the statute of limitations would begin to run. In this case, the contract does clearly state that Meridian cannot be sued more than two years after the accident. However, because the contract required the Werts to satisfy their claim with Auto-Owners while prohibiting them from suing within two years of the collision, the rationale for finding the contract ambiguous is the same.

10

and belief, there is good ground to support" the pleading or motion filed). Here, in order to file suit before the expiration of the limitations period advocated by Progressive the Clevengers's counsel would have had to forecast Sherry Clevenger's return to medical treatment after the expiration of the limitations period and speculate that the treatment would cause Sherry's claim to increase dramatically to the point of outstripping Brandenburg's insurance policy limits, thereby supporting a UIM claim against Progressive. The bridge to a non-frivolous claim would have been week indeed. Progressive's solution is neither good practice nor allowed under our statutes and rules.

838 N.E.2d at 1117 n.7.

Similarly, the contractual limitation in Meridian's policy prevented the Werts from filing a lawsuit before they exhausted Offill's policy. Once they exhausted Offill's policy, thereby complying with the full-compliance provision of the contract, the insurance contract barred them from suing because it was beyond the two-year limitation period. In this case, the Werts could not have known that they had a valid claim against Meridian until after the two-year contractual limitation period. The terms of these two provisions are in direct conflict and are thus ambiguous.

Accordingly, the trial court's entry of summary judgment for Meridian is reversed, and the cause is remanded to the trial court for further proceedings.

Reversed.

BAKER, J., and FRIEDLANDER, J., concur.

11