

Oct 18 2018, 9:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

**ATTORNEYS FOR APPELLANTS**

George M. Plews
Sean M. Hirschten
Plews Shadley Racher & Braun LLP
Indianapolis, Indiana

**ATTORNEY FOR APPELLEE**

Katherine L. Shelby
Cantrell Strenski & Mehringer, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Franke Plating Works, Inc., *Appellant-Plaintiff*, | October 18, 2018 |
| | Court of Appeals Case No. 49A02-1710-PL-2462 |
| v. | Appeal from the Marion Superior Court |
| The Cincinnati Insurance Company, | The Honorable Timothy W. Oakes, Judge |
| *Appellee-Defendant*. | The Honorable Therese A. Hannah, Commissioner |
| | Trial Court Cause No. 49D12-0703-PL-8448 |

**Brown, Judge.**

Court of Appeals of Indiana | Opinion  49A02-1710-PL-2462 | October 18, 2018          Page 1 of 26

[1]   Franke Plating Works, Inc. ("Franke Plating") appeals the trial court's September 26, 2016 entry of summary judgment and the denial of its motion to correct error.[1] Franke Plating raises several issues which we consolidate and restate as whether after fully investigating, defending, settling, and completing a number of payments relating to four environmental liabilities, it is entitled to indemnity where the first notice given to the insurer occurred no earlier than nine years after it knew of the claims against it.[2] We affirm.

### Facts and Procedural History

A. *Background*

[2]   This is an insurance coverage dispute between Franke Plating and the Cincinnati Insurance Company ("Cincinnati") concerning Insurance Policy No. 49 83 32, effective November 1, 1987 (the "1987 Policy"). Indiana corporation Franke Plating has metal finishing, plating, and coating operations that cover parts in zinc and other constituents and which had generated various hazardous and nonhazardous wastes that were shipped to several waste-handling facilities for disposal. In connection to its operations, Franke Plating

---

[1] Franke Plating's Notice of Appeal states that, in addition to appealing the trial court's entry of summary judgment, it appeals the trial court's September 28, 2017 order on its Motion to Compel Discovery, but its Brief and Reply Brief make no arguments to that effect.

[2] We heard oral argument in this case on August 15, 2018, in Indianapolis. We commend counsel for the quality of their oral advocacy and written presentations in this matter.

was named as a potentially responsible party ("PRP")[3] in actions involving environmental cleanups at three landfill sites and a citizen suit filed by Atlantic States Legal Foundation, Inc. ("ASLF") (the four claims collectively, the "Underlying Claims").

### 1. *Four County*

The Four County State Cleanup site ("Four County") operated from 1972, when it began accepting municipal wastes, until 1989, when its owners filed for Chapter 11 bankruptcy. In later years, it was licensed to accept other wastes, including industrial and later Resource Conservation and Recovery Act hazardous wastes. Until the late 1980s, the wastes were placed in unlined pits and covered with soil. Investigations found the groundwater under the site to be contaminated with Volatile Organic Compounds, Semi-Volatile Organic Compounds, and metals.

On October 29, 1991, the PRP Ad Hoc Steering Committee sent the PRPs a letter which discussed a final participation agreement and checks which were to be made payable to the Four County Landfill Administrative Fund.[4] On

---

[3] In portions of his deposition, Warren Franke ("Warren"), Franke Plating's President, indicated he understood PRP to mean "[t]hat [Franke Plating has] a pretty good chance of having our material on that property, so, therefore, we are partially responsible for the waste at this location." Appellee's Appendix Volume II at 29.

[4] The record contains a copy of the "FOUR COUNTY LANDFILL SITE PRP STEERING COMMITTEE AGREEMENT," which is stamped "DRAFT" and provides in part: "All Members of the PRP Steering Committee shall make an initial contribution of $1,000.00 for those members ranked number 1 through

November 5, 1991, Franke Plating entered into the Four County Landfill Group Agreement. On February 20, 1992, the Indiana Department of Environmental Management ("IDEM") sent Franke Plating a Special Notice of Potential Liability.

[5] Ultimately, Franke Plating was alleged to have shipped 1,158,000 converted pounds of waste or 0.1558% of the total waste contribution at Four County.[5] Its allocation was subsequently adjusted to 1,738,800 converted pounds, or 0.2042% of the total waste. On April 6, 1993, Franke Plating signed an Agreed Order, pursuant to which it paid a "percentage of waste that [it] contributed to the site." Appellant's Appendix Volume III at 22. It completed payments and, in total, incurred costs of $32,420.09.

### 2. *Fort Wayne Reduction*

[6] The Fort Wayne Reduction Superfund site ("Fort Wayne Reduction"), located in Allen County just east of Fort Wayne, was a chemical recycling factory and operated from 1967 to 1975 as a waste disposal facility. On February 22, 1989, a Consent Decree for Remedial Design/Remedial Action was lodged, the Remedial Design was completed in December 1989, and the construction of the Remedial Action began in July 1991 and was completed in October 1994. Over

---

number 58 inclusive on the attached Four County Landfill PRI Volumetric List." Appellee's Appendix Volume II at 136, 144. Warren's deposition indicates that Franke Plating was "No. 48 on the list." *Id.* at 55.

[5] The designated Volumetric Rating defines "converted pounds" as the "waste equivalent in pounds for all volume types given in the annual waste volume reports." Appellant's Appendix Volume II at 213.

27,000 drums were removed from the site and final work was completed in 1996.

[7] Franke Plating was sued as a fourth-party defendant for contribution of response costs[6] associated with remediating Fort Wayne Reduction. Ultimately, Franke Plating was alleged to have contributed 0.1738% of the total material at Fort Wayne Reduction and the demand on it was $14,217.40, plus oversight costs of $1,909.34, for a total demand of $16,126.74. Franke Plating settled the claims against it, paid its share to clean up the site, and incurred total costs of $8,000.[7]

### 3. *Wayne Reclamation*

[8] The Wayne Reclamation site covers approximately thirty acres in the southeast part of Columbia City, Indiana. Wayne Waste Oil deposited about one million gallons of oil-related wastes at the Wayne Reclamation site from 1975 to 1980.

---

[6] In its April 4, 2016 Supplemental Submission and Designation of Evidence in Support of its Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment, Cincinnati included excerpts from the Deposition of Frank Deveau regarding response, removal, and remedial costs, which indicate that "[r]esponse costs are costs to investigate or remediate contamination" that may be in the soil and groundwater; that response costs can include oversight costs for the agency as well. Appellee's Appendix Volume IV at 84. Deveau also states in his affidavit that he would include costs of removal in the "overall term of 'response costs'"; that removal and remedial costs "ALL fall under the umbrella of response costs"; that removal costs are "something that may be done to remove sort of, on an expedited basis, drums or whatever is located at a site"; and that remedial costs differ from removal costs in that "generally, remedial are costs that are incurred after a remedy has been selected, and those costs involve implementing the remedial [action]." *Id.* at 84-85.

[7] On December 16, 1994, Franke Plating paid $1,000 to the Fourth-Party Defense Fund, and on June 20, 1995, paid $7,000 in settlement. It was dismissed from the lawsuit in October 1995.

A *de minimis* consent decree involving over 800 parties and $5 million was entered in court in August 1997.

[9] Franke Plating's involvement with the Wayne Reclamation site began as early as August 17, 1985, when the United States Environmental Protection Agency ("EPA") sent Franke Plating a letter. On August 26, 1985, the father of Warren Franke ("Warren"), William J. Franke, sent a letter on Franke Plating stationery to the EPA which stated, "We are in receipt of your certified letter dated August 17, 1985, in which we are informed that we may be a responsible party generator with respect to this site and its subsequent clean-up activities." *Id.* at 5. On November 6, 1985, the EPA sent a letter to the Site Management Section which stated:

> U.S. EPA believes that you may be a party responsible for this release or threat of release. Before the government undertakes the necessary action at the site, we offer you the opportunity to perform voluntarily the required work to abate any releases of hazardous substances, pollutants, or contaminants from the site. If private party cleanup is not forthcoming and public funds are expended, you may be liable for the costs incurred. . . .
>
> U.S. EPA intends to perform the following work:
>
> 1. Excavate and dispose of approximately 400 drums. Approximately ninety-one of the drums are located above the surface.
>
> 2. Remove and dispose of contaminated soil around the drums.
>
> 3. Conduct a geophysical survey in order to locate any possible additional buried drums on the site.

4. Install three cluster monitoring wells between the city well field and the sludge ravine.

5. Initiate a sampling program for existing wells.

Appellant's Appendix Volume V at 241-242. On June 16, 1986, Franke Plating signed its agreement to an Administrative Order by Consent proceeding under Section 106 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"),[8] which states in part that the respondents agreed to "undertake all actions required by the terms and conditions of this Consent Order" and that they "shall undertake and assure, at their expense, the implementation of the Work Plan incorporated herein." *Id.* at 188, 195.

[10] On May 26, 1995, the Wayne Reclamation Site Cleanup Settlor sent a demand letter stating that Franke Plating had "received notices over the years concerning its status as a [PRP]" under CERCLA, that "to date, [Franke Plating] has failed to join in the Consent Decree and pay a share of costs of one or more of the three earlier cleanups," that it represented Franke Plating's "final opportunity to settle its share of responsibility for the cleanup of the Site without litigation," and that the "Cleanup Settlors hereby demand the amount(s) set forth . . . if settlement is reached not later than June 27, 1995."

---

[8] In the federal arena, the EPA is statutorily authorized to enforce remediation of environmental pollution. CERCLA provides several ways for the EPA to accomplish its objectives, 42 U.S.C. § 9601 *et seq*, and empowers the EPA to respond to contamination and then shift liability for "response costs" to those parties responsible. *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285 (Ind. Ct. App. 1997) (citing 42 U.S.C. § 9607), *trans. denied.*

Appellant's Appendix Volume III at 214-215. On November 13, 1996, Franke Plating's attorney, Mark A. Thoma, sent a letter concerning the Wayne Reclamation site which enclosed "the original of a signature page for the proposed *de minimis* [c]onsent [d]ecree signed by Warren T. Franke" as the representative of Franke Plating.[9] *Id.* at 220. Franke Plating signed a consent decree relating to Wayne Reclamation[10] and made the refund payments. In total, its response costs at Wayne Reclamation amounted to $49,676.83.

### 4. *ASLF Citizen Suit*

[11] ASLF filed a citizen suit on April 9, 1991, in the United States District Court for the Northern District of Indiana, styled *American States Legal Foundations, Inc. v. Franke Plating Works, Inc.*, Cause No. F 91-00083 ("Cause No. 83"), alleging that Franke Plating violated its Industrial Discharge Permit No. FT 00350, issued pursuant to the authority of sections 301(a), and 307(d) of the Federal Water Pollution Control Act, 33 U.S.C. 1311(a), 1317(d) (the "Clean Water Act"), to "discharge to the [public-owned treatment works]." Appellee's Appendix Volume II at 38.

---

[9] The record contains a copy of a document signed by Warren T. Franke on November 13, 1996, for "Defendant Franke Plating Works, Inc. . . . in A.H. Choitz action" which indicates Mark A. Thoma as the agent authorized to accept service on behalf of Franke Plating. Appellant's Appendix Volume VI at 123.

[10] The record contains a copy of a December 22, 1997 consent decree in *U.S. v. A.H. Choitz*, Cause No. 1:97-CV-362.

[12] ASLF citizen suits, like that filed in Cause No. 83, were common and recurring throughout the 1980s and 1990s. ASLF is a not-for-profit organization that, according to its complaint in Cause No. 83, is "dedicated to protecting and restoring the natural resources, particularly the water resources, of the United States and its territories." Appellant's Appendix Volume VII at 216. During the 1990s, ASLF obtained public records of permitted facilities and initiated citizen suits against companies that experienced exceedances of the discharge limits of their National Pollution Discharge Elimination Systems ("NPDES") or Industrial Discharge permits.[11] The Clean Water Act allowed ASLF to recover attorney fees, daily penalties, and other costs in such cases.

[13] On June 30, 1992, Franke Plating and ASLF entered a Revised Consent Decree in Cause No. 83, wherein Franke Plating agreed to pay a $20,000 penalty to the United States Treasury Department and a $50,000 payment to the Nature Conservancy in Indiana "to put to use in its Fish Creek Watershed preservation project," as well as to reimburse ASLF "in the amount of $5,000 for its efforts in monitoring [Franke Plating's] compliance with both the Clean Water Act and the terms of this settlement" and "its fees and costs . . . up to a maximum of $20,000." Appellant's Appendix Volume III at 234-235. Franke Plating made the payment pursuant to the Revised Consent Decree from August 17,

---

[11] The designated revised affidavit of Frank Deveau states that NPDES permits set "limits on water discharges by regulating point sources that discharge pollutants into waters of the United States. An Industrial Discharge Permit is issued pursuant to the NPDES program, typically as authorized by a local ordinance. Discharges are self-reported and data is publicly available." Appellant's Appendix Volume IV at 58.

1992, through April 23, 1993, and, in total, incurred costs in the ASLF suit of $90,002.24.

B. *The 1987 Policy*

[14] Franke Plating seeks coverage under only the 1987 Policy, a comprehensive general liability policy, which provides in relevant part:

> **4. Insured's Duties in the Event of Occurrence, Claim or Suit**
>
> (a) In the event of an occurrence,[12] written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.
>
> (b) If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

---

[12] The 1987 Policy provides that:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
>> Coverage A. bodily injury or
>> Coverage B. property damage
>
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage . . . .

Appellant's Appendix Volume II at 128. The 1987 Policy defines "property damage" in part as "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom," and "personal injury" to include "wrongful entry or eviction or other invasion of the right of private occupancy." *Id.* at 113, 133.

(c) The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of injury or damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidences and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

Appellant's Appendix Volume II at 114.

C. *Procedural History*

[15] On March 1, 2007, Franke Plating filed a complaint against Cincinnati and other insurers for declaratory relief and damages.[13] At the time when the complaint was filed, there was no ongoing defense being undertaken for any of the Underlying Claims. On October 31, 2015, Franke Plating sought summary judgment and designated materials in support of its motion including the revised affidavits of Warren and Frank Deveau.

---

[13] To the extent that Franke Plating maintains on appeal that it seeks to limit its argument to indemnification costs, *see* Appellant's Brief at 15 ("[I]ndemnification costs are the subject of this case. Franke Plating is not seeking defense costs."), we observe the statements in Franke Plating's complaint that it "was for declaratory relief and damages" and that Cincinnati was "obligated under each of their policies to pay defense costs incurred by Franke Plating and/or all sums, subject only to policy limits, incurred by Franke Plating for response, contribution, and/or settlement costs incurred as a result of the Underlying Claims." Appellant's Appendix Volume II at 95, 98. It also requested, in part, that the court "requir[e] [Cincinnati] to defend and indemnify Franke Plating in the Underlying Claims." *Id.* at 99.

[16] Warren's revised affidavit contained attached copies of Damage Summary and Pre-Judgment Interest spreadsheets pertaining to the Underlying Claims. Combining the incurred response costs with the corresponding pre-judgment interest,[14] as calculated and presented in the designated spreadsheets, produced the following:

| Underlying Claim | Cost | Pre-Judgment Interest (as of Oct. 1, 2015) | Total |
|---|---|---|---|
| Four County | $ 32,420.09 | $ 20,159.56 | $ 52,579.65 |
| Fort Wayne Reduction | $ 8,000.00 | $ 13,020.05 | $ 21,020.05 |
| Wayne Reclamation | $ 49,676.83 | $ 73,271.28 | $ 122,948.11 |
| ASLF | $ 90,002.24 | $ 164,870.97 | $ 254,873.21 |
| **Totals** | $ 180,099.16 | $ 271,321.86 | $ 451,421.02 |

*See* Appellant's Appendix Volume IV at 33-37.

[17] Deveau's revised affidavit provides that he was a partner at Taft Stettinius & Hollister LLP, in Indianapolis, Indiana; that liability under CERCLA is retroactive, joint and several, strict, and onerous; that defenses to liability are few; and that the EPA "has long adhered to an 'enforcement first' strategy," has authority to issue unilateral orders to compel cleanups, and "frequently is able to compel PRPs to settle cleanup and cost reimbursement claims." *Id.* at 49-50. The affidavit also provides that there is no minimum threshold amount to impose liability under CERCLA, and that the Clean Water Act governing the

---

[14] Franke Plating maintains it seeks the incurred response costs which, along with the pre-judgment interest, constitute "total indemnification costs." Appellant's Brief at 15.

ASLF citizen suit "likewise is a strict liability regime" that "imposes strict liability and statutory penalties for NPDES exceedances." *Id.* at 51. It also states, in part, that Deveau became familiar with both the Underlying Claims involving Franke Plating and the litigation between it and Cincinnati, that the "response, contribution and indemnification costs Franke Plating incurred resolving its liability . . . were reasonable, appropriate, and necessary," and that it was "highly unlikely that the costs Franke Plating incurred . . . could have been further reduced or minimized." *Id.* at 59.

[18] On December 2, 2015, Cincinnati filed its own motion for summary judgment and a brief in opposition to Franke Plating's motion and in support of its motion. Cincinnati designated evidence, including Franke Plating's response to Cincinnati's Interrogatory No. 5.f,[15] affidavits of Brian Keipert and Debra Davis, and excerpts from Deveau's deposition.

[19] Deveau's deposition includes testimony that he did not ask Attorney Thoma for a copy of his file in the ASLF litigation or discuss with him any defenses that were put forth by Franke Plating; that he did not have a copy of the ASLF complaint that was filed before his first affidavit was signed; and that he did not believe that a copy of the fourth-party amended complaint in Fort Wayne

---

[15] Cincinnati's December 2, 2015 submission and designation of evidence states that it "hereby submits and designates . . . 2. [Franke Plating's] Answers to Interrogatories, Interrogatory No. 5.f., attached hereto as Exhibit A." Appellee's Appendix II Volume 2 at 2. The included Response to Interrogatory No. 5 states in part that, "[w]ith regard to f, Franke Plating has not sought coverage with respect to any of the Underlying claims." *Id.* at 13.

Reduction was provided to him but he remembered being "part of the group that prepared and filed it." Appellee's Appendix Volume IV at 34. In response to the question of whether he asked Attorney Thoma for a copy of his files for any of the sites in which he represented Franke Plating in the Underlying Claims, Deveau testified, "Yeah. We talked about his files. . . . I'm pretty sure he said they couldn't find anything. Certainly, as to Atlantic States, he said they couldn't find anything." *Id.* at 32. When asked, with regard to Fort Wayne Reduction, where he obtained information for the statement in his original affidavit that Franke Plating's total response costs were $14,250.00, he stated it "was a number provided to me by counsel" and that he did not look at any documentation in preparing the affidavit that supported that number, and that he made the assumption that "the numbers provided by counsel for this payment . . . was the payment" made for Fort Wayne Reduction Site. *Id.* at 36. Deveau also agreed that he had not reviewed the shipping records for Franke Plating and stated, "I think as to Wayne Reclamation, there were some payment documents, or some record of payments for shipments sent there that I saw." *Id.* at 38.

[20] On April 18, 2016, the trial court held a hearing on the summary judgment motions and, on September 26, 2016, granted Cincinnati's summary judgment motion and denied Franke Plating's motion. The court's September 26, 2016 order excerpted the "Insured's Duties in the Event of Occurrence, Claim or Suit" section of the 1987 Policy and found that paragraph 4(a) set "forth the insured's responsibility for an occurrence"; paragraph 4(b) set forth "the

insured's responsibilities for a claim or lawsuit"; and paragraph 4(c) set forth "the insured's cooperation clause." Appellant's Appendix Volume II at 37. It additionally stated in relevant part:

> It is undisputed that [Cincinnati] first learned of the four [Underlying Claims] against Franke Plating when the lawsuit was filed. (Aff. Of Brian Keipert, . . . p.1, ¶3.)
>
> It is undisputed that Franke Plating failed to provide notice of a loss to [Cincinnati] until it filed this declaratory judgment action. There is also no dispute that Franke Plating paid all sums resulting from the [Underlying Claims] before [Cincinnati] was notified of the claims.

### DECISION

> The Parties to this case make arguments based on the Policy's notice requirement and the cooperation clause. [Cincinnati] urges that recent decisions compel this Court to find the presumption of harm becomes irrebutable when untimely notice is given, such as notice after a settlement. Or, in Judge Posner's words, "when notice is *that* late the insurer is off the hook." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Mead Johnson & Co. LLC*, 735 F.3d 539, 544 (7th Cir. 2013) (Court found Indiana adhered to rebuttable presumption of harm even if notice of loss occurred after verdict[).]
>
> In[] *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267 (Ind. 2009), our Supreme Court held an insured who failed to comply with a notice requirement could not prevail in a cause of action claiming its insurer breached a duty to defend because an insurer "cannot defend a claim of which it has no knowledge." *Dreaded* at 1273. Under this holding, the insurer bears no responsibility for pre-notice costs.
>
> In *Travelers Ins. Companies v. Maplehurst Farms, Inc.*[,] 953 N.E.2d 1153 (Ind. Ct. App. 2011)[,] *trans. denied* [("*Maplehurst Farms I*")],

and the case on remand, *Travelers Cas. And Sur. Co. v. Maplehurst Farms, Inc.*[,] 18 N.E.3d 311 (Ind. Ct. App. 2014)[,] *trans. denied* [("*Maplehurst Farms II*")], the Indiana Court of Appeals held an insurer was not responsible for any costs incurred by the insured prior to receiving notice of the loss. *Travelers Cas. And Sur. Co. v. Maplehurst Farms, Inc.*[,] 18 N.E.3d [at 313].

[Cincinnati] argues recent decisions treat an insured's notice requirement clause as a condition precedent to the insurer's duty to defend, [*Dreaded*, 904 N.E.2d 1267, 1271 fn.1]. The *Maplehurst* Court abandoned a prejudice requirement when a genuine issue of fact that late notice did not prejudice an insurer was of no consequence. [*Maplehurst Farms I*,] 953 N.E.2d [at 1163]. Under this analysis, an insurer is absolved of responsibility for expenses incurred by an insured before the insurer receives policy notice regardless of prejudice.

The Court, following recent precedent, finds that Franke Plating's failure to forward notice of the four claims and Franke Plating's payment and settlement of the claims prior to [Cincinnati's] receipt of notice of a claim, excuse [Cincinnati] from any obligation to pay Franke Plating for settlement costs or interest thereon.

*Id.* at 37-39. Franke Plating filed a motion to correct error which, after a hearing, the court denied.

## *Discussion*

[21]   The issue is whether the trial court erred in entering summary judgment in favor of Cincinnati and against Franke Plating. The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Sheehan Const. Co., Inc. v. Continental Cas. Co.*, 938 N.E.2d 685, 689 (Ind. 2010) (citing *Bushong v.*

*Williamson*, 790 N.E.2d 467, 474 (Ind. 2003)), *reh'g denied*. Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts establishing a genuine issue for trial. *Id.* (citing *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind. 1992)). If the opposing party fails to meet its responsive burden, the court shall render summary judgment. *Id.* (citing *Bushong*, 790 N.E.2d at 474). We construe all factual inferences in the nonmoving party's favor and resolve all doubts as to the existence of a material issue against the moving party. *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012). "The fact that the parties have filed cross-motions for summary judgment does not alter our standard for review." *Asklar v. Gilb*, 9 N.E.3d 165, 167 (Ind. 2014) (citing *Reed*, 980 N.E.2d at 289). Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

[22] An insurance policy is a contract, and as such is subject to the same rules of construction as other contracts. *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 251 (Ind. 2005) (citations omitted). Interpretation of a contract is a pure question of law and thus, is reviewed *de novo*. *Harrison v. Thomas*, 761 N.E.2d 816, 818 (Ind. 2002). When construing the language of an insurance policy, a court "should construe the language of an insurance policy so as not to render any words, phrases or terms ineffective or meaningless." *State Farm Mut. Auto.*

*Ins. Co. v. Jakubowicz*, 56 N.E.3d 617, 619 (Ind. 2016) (citing *Wert v. Meridian Sec. Ins. Co.*, 997 N.E.2d 1167, 1170 (Ind. Ct. App. 2013) (citation omitted)).

[23] Clear and unambiguous terms are given their clear and ordinary meaning, *Jernas v. Gumz*, 53 N.E.3d 434, 444 (Ind. Ct. App. 2016), *trans. denied*, in order "to accomplish the primary goal of contract interpretation: 'to determine the intent of the parties at the time the contract was made as disclosed by the language used to express their rights and duties.'" *Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, 577-578 (Ind. 2013) (quoting *First Fed. Sav. Bank of Ind. v. Key Markets, Inc.*, 559 N.E.2d 600, 603 (Ind. 1990)). Insurance policies with directly conflicting terms are ambiguous. *Jakubowicz*, 56 N.E.3d at 619 (citing *Wert*, 997 N.E.2d at 1171). Under Indiana law, an insurance policy is ambiguous if reasonable persons may honestly differ as to the meaning of the policy language. *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985) (citing *Benefit Tr. Life Ins. Co. v. Waggoner*, 473 N.E.2d 646 (Ind. Ct. App. 1985); *Huntington Mut. Ins. Co. v. Walker*, 392 N.E.2d 1182 (Ind. Ct. App. 1979)). Where there is ambiguity, insurance policies are construed strictly against the insurer, and the policy language is viewed from the standpoint of the insured. *Jakubowicz*, 56 N.E.3d at 619 (citing *Allstate Ins. Co. v. Dana Corp.*, 759 N.E.2d 1049, 1056 (Ind. 2001)).

[24] In a case involving a claim for indemnification under a standard commercial general liability policy, the Indiana Supreme Court has provided:

> Requiring prompt notice allows insurers the opportunity to investigate the circumstances surrounding claimed losses in a

timely and adequate manner. *P.R. Mallory & Co. v. Am. Cas. Co. of Reading, Pa.*, 920 N.E.2d 736, 746 (Ind. Ct. App.2010), *trans. denied*. In *Miller v. Dilts*, this Court determined that "[p]rejudice to the insurance company's ability to prepare an adequate defense can therefore be *presumed* by an unreasonable delay in notifying the company about the accident or about the filing of the lawsuit." 463 N.E.2d 257, 265 (Ind. 1984) (emphasis added). Once prejudice is presumed, the burden is on the insured to "establish some evidence that prejudice did not occur in the particular situation." *Id.*; *see also Askren Hub States Pest Control Svcs., Inc. v. Zurich Ins. Co.*, 721 N.E.2d 270, 279 (Ind. Ct. App. 1999) ("The presumption of prejudice essentially means that if the delay in giving the required notice is unreasonable, the injured party or the insured has the burden to produce evidence that prejudice did not actually occur in the particular situation."). The duty to notify is a condition precedent to the insurance company's liability to its insured. *Miller*, 463 N.E.2d at 263. "Where prejudice is created by the insured's noncompliance with the policy's provisions, the insurance company is relieved of its liability under the policy." *Id.* at 261.

*Sheehan Const. Co., Inc.*, 938 N.E.2d at 689.

[25] Franke Plating characterizes the instant case as one of forfeiture, or where an insurer "seeks to work a forfeiture due to late notice," Appellant's Brief at 32, and argues that "barring coverage absent a showing of prejudice" is an extreme remedy. *Id.* at 18. It also argues that *Dreaded* and *Maplehurst Farms I* do not control, because the 1987 Policy lacks a consent requirement, and that the trial court should have instead relied on *Governmental Interinsurance Exch. v. City of Angola*, 8 F. Supp. 2d 1120, 1134-1135 (N.D. Ind. 1998), which it asserts involved the same policy language used in the 1987 Policy and which held that

the voluntary payments provision involved therein did not operate to bar coverage. It contends that without a consent requirement "the only issue under the voluntary payments clause is whether the liability costs paid are 'voluntary payments'" and it is "reasonable to construe the clause as *City of Angola* did, barring only truly 'voluntary' payments." Appellant's Brief at 27, 30. It contends that *Dreaded* dealt with defense costs and not indemnity costs, and asserts that "[b]ecause the duty to defend is broader than the duty to indemnify, and requires the involvement of the insurer, . . . it makes sense that late notice of a defense claim would be more problematic than late notice of an indemnity claim." *Id.* at 33.

[26] In response, Cincinnati argues that *Dreaded* and *Maplehurst Farms I* found "pre-notice defense and indemnity costs were not covered due to failure to comply with the notice requirements of the policies." Appellee's Brief at 22. It argues that Franke Plating's settlements and indemnity payments were voluntarily made and contends that, even with the additional language of "without our consent" in the voluntary payments clause in *Maplehurst Farms I*, the "costs must still be voluntarily made before the 'without our consent' language would apply." *Id.* at 31. Cincinnati points to several actions of Franke Plating, including its joining of the Land County Landfill PRP Group in 1991, signing of the "1986 Consent Order" concerning the Wayne Reclamation site, and settling of the Fort Wayne Reduction lawsuit "brought against it by other PRPs, not the EPA," and asserts that Franke Plating's conduct in the Underlying

Claims contradicts the argument that its actions were not voluntary. *Id.* at 32-33.

[27] We first find that the plain language of Sections 4(a) and 4(b) of the 1987 Policy is clear regarding the provision of notice to Cincinnati by Franke Plating, and unambiguously requires that, in the event of an occurrence, written notice containing particulars shall be given by or for Franke Plating to Cincinnati "as soon as practicable" and that, if a claim is made or suit is brought against Franke Plating, it "shall *immediately forward* to [Cincinnati] every demand, notice, summons or other process received." Appellant's Appendix Volume II at 114 (emphasis added). Per the record, it is undisputed that the first notice of any loss that Franke Plating gave to Cincinnati was when it filed the March 1, 2007 complaint. With respect to the Wayne Reclamation site the first notice was given to Cincinnati either, at the very least, nine years or, at the very most, twenty-two years after it had knowledge of any loss. We also note that Franke Plating did not give notice until more than eleven years had passed after making the June 20, 1995 payment with respect to Fort Wayne Reduction; thirteen years had passed after signing the April 6, 1993 Agreed Order with respect to Four County; and fourteen years had passed after starting to pay pursuant to the June 20, 1992 Revised Consent Decree with respect to the ASLF citizen suit. Accordingly, we cannot say that Franke Plating satisfied the 1987 Policy's section 4(a) and 4(b) notice provisions.

[28] We further find that Franke Plating's delay in giving Cincinnati notice was unreasonable and that prejudice is, therefore, presumed here. *See Sheehan Const.*

*Co., Inc.*, 938 N.E.2d at 689. At oral argument, counsel for Franke Plating admitted that Franke Plating breached the 1987 Policy and indicated that "nothing prevented it from giving notice except a lack of understanding of [its] legal rights." Oral Argument at 7:53-7:58.

[29] Franke Plating's arguments concerning remedies – and characterizing the instant case as one involving forfeiture – essentially assert, at their core, that the notice provisions, as conditions precedent, should be excused because enforcement would otherwise cause it to suffer a disproportionate forfeiture. In its brief and at oral argument, Franke Plating referred to Restatement (Second) of Contracts § 229 (1981) in support of this position. Section 229 provides:

> To the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange.

Section 229 of the Restatement requires performance by the party seeking to avoid the forfeiture. *Hoosier Energy Rural Elec. Co-op., Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1320 (7th Cir. 1994). Comment b of Section 229 provides: "[F]orfeiture is used to refer to the denial of compensation that results when the obligee loses his right to the agreed exchange after he has relied substantially, as by preparation or performance on the expectation of that exchange. . . ." In this case, Franke Plating did not prepare to perform or perform in any way: after having learned of the Underlying Claims, it waited until after it had fully investigated, defended, settled, and paid on each of the

claims before eventually notifying Cincinnati of its losses. Accordingly, Franke Plating's argument about remedies does not overcome the plain language of the 1987 Policy.

[30] For these reasons, we conclude that Franke Plating has not met its burden of establishing evidence that prejudice did not occur in the particular situation and the trial court did not err in entering summary judgment in favor of Cincinnati.

## *Conclusion*

[31] For the foregoing reasons, we affirm the trial court's entry of summary judgment.

Bailey, J., concurs.

Crone, J., concurs in part and dissents in part.

# IN THE
# COURT OF APPEALS OF INDIANA

Franke Plating Works, Inc.,

*Appellant-Plaintiff*,

v.

The Cincinnati Insurance Company,

*Appellee-Defendant*.

Court of Appeals Case No.
49A02-1710-PL-2462

Appeal from the Marion Superior Court

The Honorable Timothy Oakes, Judge

The Honorable Theresa Hannah, Magistrate

Trial Court Cause No.
49D02-0703-PL-8448

**Crone, Judge, concurring in part and dissenting in part.**

Citing *Sheehan*, 938 N.E.2d at 689, the majority finds that "Franke Plating's delay in giving Cincinnati notice was unreasonable and that prejudice is, therefore, presumed here[,]" and holds that Franke Plating failed to designate sufficient evidence to rebut that presumption. Slip op. at 22, 23. I believe that Deveau's affidavit is sufficient to establish genuine issues of material fact regarding whether Cincinnati was prejudiced by Franke Plating's delay. Denying Franke Plating the coverage that it paid for in the absence of any prejudice to Cincinnati would result in a disproportionate forfeiture, and "forfeitures are generally disfavored by the law." *Gates v. Houston*, 897 N.E.2d 532, 536 (Ind. Ct. App. 2008).

[33] For its part, Cincinnati relies on *Maplehurst Farms I*, in which a divided panel of this Court stated that "where an insured enters into a settlement agreement without the insurer's consent *in violation of a voluntary payment provision*, that obligation cannot be recovered from the insurer, and prejudice is irrelevant." 953 N.E.2d at 1161 (emphasis added).[16] This begs the question, unanswered by my colleagues, of whether Franke Plating entered into its settlement agreements in violation of the 1987 Policy's voluntary payment provision. Franke Plating argues that it did not, and I believe that it designated enough evidence to establish genuine questions of fact on this issue.[17]

[34] There is a fundamental difference between not being able to recover defense costs and forfeiting the indemnification rights pursuant to the policy. Upon remand, Cincinnati would still be permitted to argue prejudice sufficient to warrant forfeiture of their indemnification obligation, but I do not think that summary judgment on that issue is appropriate on this record. In sum, I would reverse the trial court's entry of summary judgment for Cincinnati, affirm its

---

[16] As did Judge May in her dissent, I disagree with the *Maplehurst* "majority's apparent premise that after [*Dreaded v. St. Paul Guardian Insurance Co.*], reasonableness is no longer a permissible consideration in our analysis of late-notice disputes[,]" because "[s]uch a premise is inconsistent with the explicit language of [*Miller v. Dilts*], and nothing in [*Dreaded*] suggests reasonableness must, should, or can be disregarded." 953 N.E.2d at 1163 (May, J., dissenting).

[17] The voluntary payment provision in *Maplehurst Farms I* reads, "No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, *without our consent.*" 953 N.E.2d at 1156 (emphasis added). The italicized phrase is absent from the 1987 Policy in this case. I do not agree with Franke Plating that the absence of this phrase is dispositive of whether it violated the 1987 Policy's voluntary payment provision, but I do believe that it militates against a denial of coverage.

denial of summary judgment for Franke Plating, and remand for further proceedings.[18]

---

[18] I believe that genuine issues of material fact exist regarding whether the "known loss" doctrine applies to the Wayne Reclamation claim, whether the Atlantic States claim involves "property damage," and whether Franke Plating is entitled to prejudgment interest.